**June T. PERRY, Plaintiff-Appellee,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellant.**

No. 83–8048.

United States Court of Appeals, Eleventh Circuit.

June 22, 1984.

Clayton H. Farnham, Atlanta, Ga., for defendant-appellant.

Andrew H. Marshall, Athens, Ga., for plaintiff-appellee.

Before KRAVITCH and ANDERSON *, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

In this diversity action, plaintiff June T. Perry sued State Farm Fire & Casualty Company ("State Farm") to collect under a homeowners insurance policy following the destruction, by fire, of Perry's home. A jury awarded Perry the full amount of her claim.

On appeal, State Farm contests various rulings of the district court excluding evidence from the jury's consideration. Finding no reversible error, we affirm.

## I. BACKGROUND

June Perry owned a residence in Carnesville, Georgia, with her ex-husband, Jimmy Perry. The dwelling and its contents were insured under a State Farm Homeowners insurance policy for $62,655 and $33,108.54, respectively. On January 30, 1982, fire destroyed the property, and the Perrys thereafter submitted a claim to State Farm under the policy for the full amount of the

---

* Judge R. Lanier Anderson, III, having recused himself, did not participate in the decision of this case. The case is being decided by a quorum. 28 U.S.C. § 46(d).

coverage. State Farm's Senior Claims Specialist, Ed Pihl, investigated the fire loss. As part of his investigation, Pihl took an unsworn statement from June Perry on March 5, 1982.

On March 12, 1982, June Perry submitted to State Farm a Sworn Statement in Proof of Loss, in which she made a formal claim for one-half the dwelling coverage and the entire contents coverage.[1] On April 26, 1982, State Farm's attorney examined June Perry under oath about her claim.

State Farm denied Mrs. Perry's claim in a letter dated June 28, 1982. The letter explained that State Farm's investigation had revealed that the fire was started by Mrs. Perry or on her behalf. The letter added that Mrs. Perry had made a number of misrepresentations, both sworn and unsworn, voiding the policy under the following clause:

> We do not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance related to this insurance.

On August 5, 1982, Mrs. Perry sued State Farm in state court to enforce the policy. The case was removed to the United States District Court for the Middle District of Georgia. At trial, State Farm attempted to prove that Mrs. Perry had burned her home because she was financially desperate. State Farm introduced evidence that Mrs. Perry had received notice in October, 1981, three months before the fire, that her only source of income, her Social Security benefits, was being cut off. State Farm also introduced evidence that Mrs. Perry had received a notice of foreclosure on her home ten days before the fire. State Farm attempted to show that the house was in poor condition and worth less than half its insured value, but the district court excluded this evidence in the form in which it was offered.

State Farm also attempted to establish that Mrs. Perry had tried to hide her motive for arson by making material represen-

tations on March 5 and April 26, including misstatements about her income, the notice of foreclosure, and attempts to sell her house. The trial judge ruled evidence of these misrepresentations inadmissible, but did allow evidence of three alleged misrepresentations on the Sworn Proof of Loss.

At the conclusion of the trial, the jury found that Mrs. Perry had not caused the burning of her house, had not misrepresented material facts, and was entitled to a recovery of $33,910. The district court thereafter entered a slightly reduced judgment for the plaintiff in the amount of $33,108.54 plus interest and costs.

In this appeal, State Farm argues that the district court erred: 1) in excluding evidence of several of the alleged misrepresentations; 2) in excluding evidence of the condition of the house on the issue of motive for arson; and 3) in denying State Farm's motion to procure testimony from the Social Security Administration about the official termination date of Mrs. Perry's Social Security benefits.

## II. EVIDENCE OF MISREPRESENTATIONS

State Farm argues that the trial court improperly excluded evidence of several material misrepresentations from the jury's consideration.

■ Under a misrepresentation clause, a willful and intentional misrepresentation of material facts made for the purpose of defrauding the insurer will void the contract. *American Alliance Insurance Co. v. Pyle*, 8 S.E.2d 154, 160, 62 Ga.App. 156 (1940). A misrepresentation is material if it "might affect [the insurer's] action in respect to ... settlement or adjustment of the claim of the insured." *American Alliance Insurance Co. v. Pyle*, 8 S.E.2d at 160. However, the insurer need not actually rely on the representation or suffer any prejudice therefrom. *See Pittman v.*

---

1. Jimmy Perry filed a similar statement claiming the other one-half of the dwelling proceeds and $1,471.82 for personal property destroyed in the fire. His claim was paid in full and is not at issue in this case.

*American Mutual Fire Insurance Co.,* 199 S.E.2d 893, 129 Ga.App. 399 (1973).

■ Whether a misrepresentation is material is a jury question, unless the evidence excludes every reasonable inference except that there was or was not a material misrepresentation. *United Family Life Insurance Co. v. Shirley,* 248 S.E.2d 635, 636, 242 Ga. 235 (1978). In this case, the trial court excluded evidence of the following alleged misrepresentations from the jury's consideration, thus finding implicitly that no reasonable jury could have found material misrepresentations on the basis of the proffered evidence.

### A. Offer to Buy the House

■ In her March 5, 1982 statement, Perry told State Farm that she had a buyer, Sammy Macomson, for her house. When asked whether Macomson had made a firm offer, she said yes. On April 26 she again told State Farm that Macomson wanted to buy her house. At trial, State Farm argued that these were misrepresentations because Macomson had never made a firm offer for the house. State Farm acknowledged that Macomson had discussed buying the house with Perry, but wanted to introduce Macomson to testify that he would have been willing to buy the house only at a price that was less than half its insured value.

The trial court found that because Macomson had discussed buying the house, there was no material misrepresentation. We agree. No reasonable jury could have found that Perry's responses to questions about the efforts to sell her house were false. Her statement that she had a buyer for the house were true. If Mrs. Perry's response that she had a "firm offer" was not technically accurate, the fault lies with State Farm for failing to explain exactly what the term meant and to ask her the price at which the offer had been made.

### B. Notice of Foreclosure

On March 5, Perry was asked whether she had ever received a notice of foreclosure. She said no. On April 26, she was asked whether her bank had ever threatened foreclosure. She responded that "over a month" before the fire the bank had written her that "they were going to have to foreclose" on the house. In fact, Mrs. Perry received a letter from the bank ten days before the fire stating that the bank was accelerating her payments and that if she did not pay off her mortgage, it was going to foreclose.

The trial court found no misrepresentation because Mrs. Perry told State Farm about the bank's letter. It ruled immaterial the discrepancy over the actual date of the letter's receipt.

We agree that Perry's statement that she received the letter over a month, not ten days, before the fire could not be a material misrepresentation. The material point was not the date of the notice but the fact of its receipt.

Nor do we think a reasonable jury could find that Mrs. Perry's answer on March 5 was an intentional misrepresentation. Perry drew a distinction between a notice of foreclosure and a letter of acceleration, as demonstrated by her testimony at trial.

Q. Did you ever receive a notice of foreclosure of that house, Mrs. Perry?

A. No. sir.

Q. You never did?

A. No. sir. I received a letter stating they were going to foreclose unless I paid the payments.

It is therefore clear that Perry thought she was answering accurately on March 5 and that any inaccuracy was caused by State Farm's failure to define a notice of foreclosure or to ask follow-up questions about any other letters relating to foreclosure.

### C. The Condition of the House

On April 26, Perry told State Farm that her house was in fine condition and needed no repairs. At trial, State Farm sought to introduce Perry's testimony from her divorce settlement proceeding four months before the fire that the house "needs paint, the front door has a hole in it, the screen is falling off, the carport has never been fin-

ished," the doors will not fasten, and the house is "probably" worth only $25,000. The trial court excluded the evidence on the issue of misrepresentation, because the value of the house was set by the inflation clause of the insurance policy and was therefore not an issue in the case.

The condition of the house and its value were clearly relevant to the issue of motive for arson. If the house was in fact in terrible condition, a statement that it was in fine condition and needed no repairs could be a material misrepresentation because it might falsely obscure a motion for arson, thus frustrating the insurer's investigation. However, we do not think a reasonable jury could find the proffered divorce testimony so at odds with Perry's general statements that the house was in fine condition and needed no repairs that the latter was a willful misrepresentation intended to deceive.

The repairs mentioned at the divorce trial were fairly minor. Moreover, it was not shown that the house at the time of the fire was in the same condition as it was during the divorce hearing. As for the divorce testimony that the house was "probably" worth $25,000, Perry qualified that estimate by admitting that she really did not "have any idea" of the house's value. It would be unreasonable to conclude that this statement converted her general testimony that the house was in fine condition into an intentional misrepresentation.

### D. *Refinancing the House*

On April 26, Perry told State Farm that she could have financed the house with the Federal Land Bank. At trial, State Farm wanted to submit this to the jury as a misrepresentation, arguing that her house was under foreclosure and consequently could not have been refinanced. Whether the statement about refinancing was a material misrepresentation relevant to motive for arson might have been a jury question had Perry attempted to hide the fact that the house was under foreclosure. However, her statement about refinancing immediately followed her admission that her

bank was about to foreclose. Moreover, the statement that she could finance it was made only in connection with her statement that she tried to buy it from her husband and had nothing to do with giving a valuation of the property. There was no evidence that she could not have refinanced for enough to buy her husband's half interest in the house. Given this fact, the claim of alleged misrepresentation is frivolous.

### E. *Social Security Cut-Off*

Perry's sole source of income prior to the fire was her Social Security benefits. On April 26, Perry testified that her benefits were cut off in March, two months after the fire, but that the Social Security Administration had "started back in September [four months before the fire] telling me they was cutting it off." Although Mrs. Perry's benefits were officially terminated in December, she continued to receive Social Security checks through February because of a bureaucratic error. Thus, her statement that she was cut off in March was truthful because that was the first month she did not receive a payment.

### F. *Phone Bill*

On April 26, Mrs. Perry told State Farm that her phone bill was current at the time of the fire and the months before. At trial, Perry testified that her phone bill had been cut off once in the months before the fire because she failed to pay the bill on time, but had been turned back on when she paid the bill. The court disallowed this evidence on the issue of material misrepresentation.

Although Perry's initial response was not entirely accurate, we do not think a reasonable jury could conclude that it was a willful misstatement about a material fact made for the purpose of defrauding the insurer.

### G. *Gas and Grocery Expenses*

On April 26, Perry told State Farm that she did not know how much she spent on groceries and gasoline. At trial, State Farm proffered as proof of a misrepresentation an expense list submitted by Perry

to the divorce court several months before the fire. The district court found that Perry's inability to estimate her expenses was not a material misrepresentation. We do not think a reasonable jury could conclude otherwise, particularly since it was Perry's divorce lawyer who actually prepared the list of expenses proffered by State Farm.

## III. EVIDENCE OF THE CONDITION OF THE HOUSE

State Farm argues that the divorce testimony relating to the condition and value of the house, discussed *supra*, should have been admitted to impeach Perry's trial testimony that her house was in "perfect condition" at the time of the fire. State Farm also argues that the divorce testimony was relevant to the issue of Perry's motive to burn the house because it evidenced her belief that the house was worth $25,000, only half its insured value.

The trial court ruled the testimony inadmissible for impeachment purposes because in its opinion, the divorce testimony did not contradict the trial testimony; the court ruled the testimony inadmissible on the issue of motive because it was not relevant.

■ "The admissibility of evidence is within the sound discretion of the district court ... and even if error is found it must of course rise above the threshold of harmless error." *Wallace v. Ener*, 521 F.2d 215, 222 (5th Cir.1975).[2]

■ But for the failure of proof that the house was in the same condition as of the time of her divorce testimony, we would think the trial court erred in excluding the divorce testimony for impeachment and on the issue of motive. Testimony that a house needs repairs, however minor, con-

tradicts a statement that a house is in "perfect condition." Also, testimony about a house's condition and value are relevant to a motive for arson. Here, however, there was a burden on the defendant to show that the property as to which Perry was testifying in the divorce trial was in the same condition at the time of the fire, before such earlier testimony could be considered, either as impeachment or as proof of motivation. The divorce decree had directed that the house be sold and the proceeds divided between husband and wife. There was no proof offered that during the intervening four months it had been neither painted nor repaired. Moreover, we think such error would be harmless. Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties. Fed.R.Evid. 103; Fed.R.Civ.P. 61. The burden of demonstrating that substantial rights were affected rests with the party asserting error. *Liner v. J.B. Talley & Co., Inc.*, 618 F.2d 327, 329 (5th Cir.1980). State Farm argues that it was harmed by the exclusion of evidence because the evidence would have affected the outcome of the case.

We find the error harmless because the evidence in question had little probative value. The needed repairs mentioned in the divorce testimony would not have greatly affected the value of the house. The value of $25,000 placed on the house by Perry in that testimony was more a guess than anything else; she also testified that she did not "have any idea" what the house was worth.[3] Under these circumstances, the excluded evidence would not have added appreciable weight to the insurer's defense. *See Garcia v. Gloor*, 618

---

**2.** *In Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**3.** We note that the essence of the excluded evidence, mainly that the house was worth only $25,000, was at least suggested to the jury by a question posed to Mrs. Perry and by the closing argument of Perry's attorney. State Farm asked

Mrs. Perry: "Isn't it true [at the divorce trial] that ... you considered the house at that time to be worth about $25,000?" The question went unanswered. It was not stricken by the court.

In his closing argument, Perry's attorney referred to the fact that "Mr. Farnham [State Farm's attorney] was trying to bring out that it was worth $25,000." Perry's attorney went on to argue that even assuming this was true, Mrs. Perry had no motive to burn the house down.

F.2d 264, 271–72 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).

## IV. SOCIAL SECURITY TESTIMONY

■ Before trial, State Farm moved the district court under 5 U.S.C. § 552a(b)(11) (West 1977), to order the Social Security Administration to testify as to when Perry's Social Security benefits were terminated. The district court denied the motion, stating simply that it had a policy against ordering such information to be produced by the Secretary. State Farm argues that this was reversible error because it prejudiced the arson and misrepresentation defenses by preventing State Farm from establishing that Perry's benefits were officially terminated in December, one month before the fire. As noted above, because of a bureaucratic error, Mrs. Perry continued to receive benefits through February.

■ Under 5 U.S.C.A. § 552a(b), government agencies can release information about individuals only under certain circumstances. Release is allowed when a court of competent jurisdiction so orders. 5 U.S.C.A. § 552a(b)(11) (West 1977). Requests for court orders under § 552a(b)(11) should be evaluated by balancing the need for the disclosure against the potential harm to the subject of the disclosure. *Stiles v. Atlanta Gas Light Co.,* 453 F.Supp. 798 (N.D.Ga.1978); *Christy v. United States,* 68 F.R.D. 375 (N.D.Tex. 1975).

Here, the balance tilts against disclosure because State Farm had no real need for the Social Security Administration's testimony. State Farm could have utilized normal discovery procedures to obtain information about the termination date from plaintiff or plaintiff's counsel, who had represented the plaintiff before the Social Security Administration. Moreover, on cross-examination, State Farm had an opportunity to ask Mrs. Perry when her benefits

were officially terminated, but did not do so.[4]

We find that the denial of the request for production of Social Security testimony was not error.

Accordingly, we AFFIRM.

---

4. In any event, State Farm brought out at trial that Perry had received notices in August and October preceding the January fire, that her benefits were being cut off. This was as probative on the issue of motive as the fact that the benefits were officially cut off in December.