**Paul LAXALT**

v.

**C.K. McCLATCHY, et al., Appellants.**

**No. 86–5450.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1986.
Decided Jan. 20, 1987.

Larry L. Simms, Washington, D.C., for appellants. James J. Brosnahan, San Francisco, Cal., John W. Spiegel, Los Angeles, Cal., Henry D. Levine and Margaret A. Flaherty, Washington, D.C., were on brief for appellants.

Brian J. Gallagher, New York City, with whom Mark L. Davidson, Washington, D.C., was on brief for appellee, Delbert W. Coleman.

Thomas B. Carr, with whom Stephen L. Braga, Washington, D.C., was on brief for appellee, Lester Ben Binion.

William P. Murphy, with whom James E. Beasley, Philadelphia, Pa., was on brief for appellee, Paul Laxalt.

Charles A. McNelis, Washington, D.C., entered an appearance for appellees, Morris Dalitz, et al.

Before EDWARDS and WILLIAMS, Circuit Judges, and JOYCE HENS GREEN,[*] District Judge for the United States District Court for the District of Columbia.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This appeal is taken from the District Court's refusal to issue an order permitting civil discovery of certain Federal Bureau of Investigation ("FBI") files that are subject to the Privacy Act (the "Act").[1] We hold that the District Court applied the wrong legal standard in ruling that, as a prerequisite to invoking discovery at all, the parties seeking access to the files must establish a specific "need" for the documents beyond mere relevance to the underlying litigation. Accordingly, we vacate and remand to the District Court for further proceedings consistent with the discovery standards set forth in the Federal Rules of Civil Procedure ("FRCP").

## I. BACKGROUND

The appellants are newspapers and their employees who have been named as defendants in a libel action brought by appellee Paul Laxalt in federal district court in Nevada. In April, 1986, the appellants brought a proceeding in the United States District Court for the District of Columbia, *Laxalt v. McClatchy*, Misc. No. 86–0140 (D.D.C. filed Apr. 30, 1986), for production of certain FBI records to be used in defending the libel suit. The appellants contend that these records are relevant to the truth of the allegedly libelous statements that they printed, which suggested that certain of Laxalt's associates and campaign contributors had ties to organized crime.[2]

Of the two articles that are the subject of the libel action, the first discussed the alleged organized crime associations of individuals (including intervenor-appellee Coleman) associated with a casino owned in part by Laxalt, and discussed in particular the relationship of Coleman (who helped arrange the casino's financing) with Laxalt and intervenor-appellee Korshak, who was described in the article as "one of organized crime's strongest welds to politics and big business."[3] The second article listed eight of Laxalt's senatorial campaign contributors—including intervenors-appellees Dalitz and Binion—reported to have

---

[*] Sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

[1] 5 U.S.C. § 552a (1982).

[2] The records are described in Deposition Subpoena, Record Document No. 1, Exhibit A.

[3] Defendants' Exhibit I, *reprinted in* Appendix to Brief for Appellants ("A.A.") 118, 121.

ties to organized crime.[4] Laxalt's libel complaint asserts that the articles' statements about the intervenors are false, and characterizes as defamatory the inference that Laxalt associated with members of organized crime.[5]

On January 16, 1986, the appellants filed a notice of deposition pursuant to a subpoena duces tecum issued by the United States District Court for the District of Columbia and served on the FBI's custodian of records in Washington, D.C. The appellants served a second subpoena on March 14 that complied with the FBI's request for greater specificity.[6] In his March 24 deposition, however, the FBI custodian refused to provide full information regarding the responsive files without a court order authorizing disclosure under exemption 11 of the Privacy Act.[7] The FBI and the appellants then agreed to a proposed order authorizing limited disclosure.[8] The appellants filed a motion for entry of the proposed order,[9] and the FBI filed a response of non-opposition, stating that the appellants had "made a sufficient showing of relevancy."[10] When Laxalt moved to deny the appellants' motion and transfer the discovery proceeding to Nevada,[11] the FBI opposed the transfer proposal on the ground that the federal district court in Nevada did not have jurisdiction over discovery of FBI records in Washington, D.C.[12] On June 4, 1986, the District Judge granted the appellants' motion and issued the order, which authorized discovery of specific records—including files on intervenors-appellees Coleman, Dalitz, and Binion—and permitted disclosure of the existence and general subject matter of other files on Coleman, Dalitz and Korshak.[13]

After Laxalt's counsel notified Coleman's counsel of this order,[14] Coleman, Dalitz, Binion, and Korshak intervened to block discovery. On June 17, after oral argument, the District Court entered an order denying the appellants' discovery motion and dismissing the proceeding, on the ground that the libel "defendants have failed to sustain their burden of demonstrating that they require the reports in question."[15] Specifically, the trial court held: "[U]nder the Privacy Act, Government agencies can release information about individuals only under certain cir-

---

4. Defendants' Exhibit II, *reprinted in* A.A. 124.

5. Complaint, *reprinted in* A.A. 126–80.

6. Brief for Appellants 6–7.

7. *Id.* Exemption 11 provides, in relevant part:

   (b) Conditions of disclosure
   No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

   .    .    .    .    .

   (11) pursuant to the order of a court of competent jurisdiction....
   5 U.S.C. § 552a(b)(11) (1982).

8. Stipulation and Order Permitting the FBI to Disclose Information Pursuant to the Privacy Act, *reprinted in* A.A. 106 ("Stipulation and Order").

9. Motion for Entry of Stipulation and Order Permitting the FBI to Disclose Information Pursuant to the Privacy Act, *reprinted in* A.A. 1.

10. Response by Federal Bureau of Investigation to Defendants' Motion for Entry of Privacy Act Order at 3, *reprinted in* A.A. 8.

11. Plaintiff's Memorandum in Answer to Defendants' Motion for Entry of Stipulation and Order, *reprinted in* A.A. 9.

12. Federal Bureau of Investigation's Memorandum to the Court, *reprinted in* A.A. 28.

13. Stipulation and Order, *supra* note 8, at 2–4, *reprinted in* A.A. 107–09.

14. There was no requirement that the FBI provide notice to the intervenors that their records were being released. Although the Privacy Act requires such notice generally, 5 U.S.C. § 552a(e)(8) (1982), the Act also allows the FBI to exempt certain records from that requirement, *id.* § 552a(j)(2), and the FBI has exempted the system of records containing the information sought by the appellants, 28 C.F.R. § 16.96 (1986). This exemption applies even when the records are subpoenaed. 28 C.F.R. § 16.53(a) (1986).

15. *Laxalt v. McClatchy*, Misc. No. 86–0140, slip op. at 4 (D.D.C. June 17, 1986), *reprinted in* A.A. 113.

cumstances. 'Requests for court orders under § 552a(b)(11) should be evaluated by balancing the need for disclosure against potential harm to the subject of the disclosure.' " [16] The trial court based this conclusion on its findings that (1) the libel defendants "waited until the eve of the underlying litigation to seek the reports," (2) they "obviously ... contend that they have the information to sustain their defense because they published the articles," [17] (3) they "have noticed the depositions of the intervening parties and may ask them questions relevant to the defense," and (4) they apparently cannot assert the "fair report" privilege because "it is not clear that they relied on the official report in publishing the articles in question," since they "have only made vague references to reports they may have relied on." [18] In response to the appellants' contention that it was too late in the discovery schedule to obtain the information through other discovery channels, the District Court observed that the lateness of the request was "a tactical decision they made," and that they could request additional time from the Nevada court if necessary to complete their discovery. If they were still unable to obtain the information they sought, they would then be in a stronger position to establish need for disclosure sufficient to warrant a Privacy Act order. [19] In dismissing the action, the District Court found it unnecessary to reach the merits of the protective order that had been proposed by the FBI for the purpose of protecting the Privacy Act interests of the intervenors. [20] This appeal is taken from the District Court's dismissal.

## II. ANALYSIS

### A. Privacy Act

■ Although the District Court did not expressly hold that the Privacy Act creates a qualified discovery privilege, the clear effect of its judgment was to recognize such a privilege by refusing to permit *any* discovery of the requested documents absent a showing by the appellants of specific "need" beyond mere relevance to the underlying litigation. The Privacy Act, however, does not create a qualified discovery privilege as that concept is generally understood, and we find no basis in the statute or its legislative history for inferring one. Nor does the Act create any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery. Rather, the plain language of the statute permits disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11) (1982). Neither the statute nor anything in its legislative history specifies the standards for issuance of such a court order. We therefore find no basis for inferring that the statute replaces the usual discovery standards of the FRCP—in particular, Rules 26 and 45(b)—with a different and higher standard.

16. *Id.* (citation omitted) (quoting, with a slight inaccuracy, *Perry v. State Farm Fire & Casualty Co.*, 734 F.2d 1441, 1447 (11th Cir.1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985)), *reprinted in* A.A. 113.

17. The District Court noted that the question whether the defendants-appellants could rely on the Nevada shield law and refuse to disclose their confidential sources was still being litigated in the main forum. *Id.* at 5, *reprinted in* A.A. 114.

18. *Id.* at 4–6, *reprinted in* A.A. 113–15. The appellants apparently do not contest the District Court's "fair report" determination in this appeal.

19. *Id.* at 5–6, *reprinted in* A.A. 114–15.

20. *Id.* at 3, *reprinted in* A.A. 112. The FBI's protective order would have provided that the documents would be released only to counsel for the parties to the libel action, not to the parties themselves, that no disclosures would be allowed, and that, before counsel could place any of those documents in the public record of the trial, counsel would have to obtain a separate court order. Upon receiving a request for such an order, the court would review the document to balance the interests of the libel defendants against the privacy interests at stake. Memorandum by Federal Bureau of Investigation Concerning Privacy Arguments Submitted by the Parties and the Proposed Intervenors, *reprinted in* A.A. 61.

It is well-settled in this circuit that general statutory bans on publication do not bar limited disclosure in judicial proceedings, including court-supervised discovery. *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343–44 (D.C. Cir.1984); *Freeman v. Seligson*, 405 F.2d 1326, 1348–52 (D.C.Cir.1968). We have noted that "where Congress has thought it necessary to protect against court use of records it has expressly so provided by specific language." *Freeman*, 405 F.2d at 1351, *quoted in Friedman*, 738 F.2d at 1343. We have therefore refused to infer the creation of a qualified privilege from congressional silence. *See Friedman*, 738 F.2d at 1343–44; *Freeman*, 405 F.2d at 1351. Such an inference is even less justifiable where, as in the Privacy Act, Congress has expressly *permitted* court-ordered disclosure.

■■■ Once again, we indicate that, absent an express congressional intent to the contrary, the standards set forth in the FRCP must be followed with respect to discovery requests in District Court. We therefore hold that a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and the test of discoverability is the relevance standard of Rule 26(b)(1) of the FRCP.

The fact that a document is subject to the Privacy Act is not, however, irrelevant to the manner in which discovery should proceed. Although discovery standards under the FRCP permit access to relevant documents protected by the Act, those same FRCP standards give the District Court ample discretion to fashion appropriate protective orders upon a showing of "good cause." FED.R.CIV.P. 26(c). Where the records sought are subject to the Privacy Act, the District Court's supervisory responsibilities may in many cases be weightier than in the usual discovery context.

■■■ We have noted in the past that while a statutory ban on publication is not a bar to discovery,

[n]evertheless, statutory publication shelters may have some application to discovery. These protected interests reflect a congressional judgment that certain delineated categories of documents may contain sensitive data which warrants a more considered and cautious treatment. In the context of discovery of government documents in the course of civil litigation, the courts must accord the proper weight to the policies underlying these statutory protections, and ... compare them with the factors supporting discovery in a particular lawsuit.

*Friedman*, 738 F.2d at 1344. Thus, as is true with respect to other statutory publication bans, the applicability of the Privacy Act to the materials requested is a relevant factor for the District Court to consider in determining the appropriate scope and manner of discovery in a given case. As we have noted in the past, such traditional devices as protective orders and *in camera* inspection offer reliable means with which to give effect to liberal discovery principles without threatening the interests protected by statutory publication bans:

The courts can limit, and in actual practice do limit, the persons having access to information, their freedom to discuss the information to which they are given access, and the uses to which the information may be put. No great outcry has arisen that information thus restricted has been leaked, or put to improper uses, by attorneys who are sworn officers of the court.

*Freeman*, 405 F.2d at 1350 (footnote omitted), *quoted in Friedman*, 738 F.2d at 1344.

■■■ Procedurally, then, when the District Court considers a request for a Privacy Act order in the discovery context it must consider the use of protective orders and the possibility of *in camera* inspection. It should also consider, in its discretion, the wisdom of notifying the affected parties. Although the Privacy Act does not compel the FBI to give notice to the intervenors in

this case,[21] the broad authority of the District Court in supervising discovery surely affords it the discretion to give such notice itself and ask the affected parties to appear.

Substantively, even the appellants agree that it is appropriate for the court, in exercising its discretion under Rules 26 and 45(b), to undertake some substantive balancing of interests of the sort contemplated in *Perry v. State Farm Fire & Casualty Co.*, 734 F.2d 1441, 1447 (11th Cir.1984), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985).[22] Such a balancing test was part and parcel of the FBI's proposed protective order.[23] The need to balance conflicting interests is entirely different from the proposition we reject today—that merely because records are *subject* to the Privacy Act they are exempt in their entirety from civil discovery absent a specific showing of "need." This so-called "need" analysis simply finds no support in the case law of this circuit or in the Privacy Act itself.

*Perry's* notion of balancing is unexceptional on its face: Where the actual content of the record has the potential to cause harm to the affected party, a court supervising discovery should consider this factor in determining how to exercise its traditional authority to limit disclosure. In our view, *Perry* does not mandate a test of necessity as a *prerequisite* to initiating discovery of records subject to the Privacy Act.[24] However, if *Perry* may be read to abandon or modify the standards of the FRCP in reviewing discovery requests under the Privacy Act, then we would disagree with its holding.

More relevant to this case than *Perry* are *Weahkee v. Norton*, 621 F.2d 1080 (10th Cir.1980), and *Clavir v. United States*, 84 F.R.D. 612 (S.D.N.Y.1979), both of which expressly reject the notion that the Privacy Act creates a qualified discovery privilege. Like *Perry*,[25] *Weahkee* arose in the context of post-trial review of a pretrial ruling denying a motion to compel discovery of documents protected by the Act. In *Weahkee*, however, the reviewing court separated its analysis of discoverability from its harmless error assessment, and squarely held that an objection to discovery based on subsection (b)(11) of the Act "does not state a claim of privilege." 621 F.2d at 1082. Likewise, in *Clavir*, the district court refused to bar discovery of certain FBI memoranda, finding them "relevant and discoverable unless some recognized privilege applies." 84 F.R.D. at 614. The court refused to view Privacy Act protection as the equivalent of such a privilege:

> [I]t has never been suggested that the Privacy Act was intended to serve as a limiting amendment to Part V of the Federal Rules of Civil Procedure, and exception (11) to § 552a(b) make it completely clear that the Act cannot be used to block the normal course of court proceedings, including court-ordered discovery.

*Id.* Our holding today is consistent with the decisions in both of these cases.

### B. *Appellee Laxalt*

■ Besides adding his voice to the Privacy Act arguments of the intervenors, appellee Laxalt raises several other objections to issuance of a court order permitting release of the FBI files. Principally, he asserts that the discovery proceeding should have occurred in the district court in Nevada. However, it is irrelevant whether

---

21. *See* note 14 *supra.*

22. *See* note 16 *supra* and accompanying text.

23. *See* note 20 *supra.*

24. The Eleventh Circuit enunciated its balancing test in the course of reviewing a final judgment. In post-trial review of discovery rulings, courts normally look to whether a party was actually *harmed* by an erroneous ruling. *E.g., Voegeli v.*

*Lewis*, 568 F.2d 89, 96–97 (8th Cir.1977). Because the harmless error analysis is, from an appellant's perspective, a far more stringent test than that of mere legal error, it is impossible to know for sure whether the Eleventh Circuit intended to announce a "necessity" test for all discovery orders under the Privacy Act.

25. *See* note 24 *supra.*

(and we need not decide whether) this proceeding might also have been undertaken through the jurisdiction of the federal district court in Nevada; the main point is that there is no serious doubt that the appellants' requests for discovery were within the jurisdiction of the District Court for the District of Columbia. Neither party contends that the District Court lacked personal jurisdiction over the FBI's custodian of records.[26]

On the record before us, however, we question whether Laxalt has standing to assert any of the claims that he has advanced. The appellants seek access to records possessed by and pertaining to persons other than Laxalt, and he has not asserted any personal privacy interest in the contents of those records. A litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). This rule clearly applies to discovery proceedings. *See, e.g., Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4–5 (1st Cir.1985). Thus, where, as here, a subpoena duces tecum is directed to a nonparty, "[u]nless a party to the action can make a claim to some personal right or privilege with respect to the subject matter of such subpoena directed to a nonparty witness, the party to the action has no right to relief under these rules, [26(a), 30(b), 45(b) and 45(d) ]." *Taylor v. Litton Medical Prods., Inc.*, 19 Fed.R.Serv.2d (Callaghan) 1190, 1192 (D.Mass.1975) (bracketed material in original). On remand, the District Court should determine whether Laxalt has any legally cognizable stake in the matter other than a general "good citizen" interest in knowing that the Privacy Act is being properly administered.

Unless he can establish such a stake, Laxalt's claims must be dismissed.

### III. CONCLUSION

Because the District Court applied an erroneous legal standard in dismissing this matter, we vacate the dismissal and remand with instructions to apply the discovery standards and procedures set forth in the FRCP, with due regard for any genuine privacy interests that may be implicated, and to dismiss Laxalt's claims unless he can establish some personal right or privilege with respect to the FBI files at issue.

*So ordered.*

---

26. Laxalt also contends that the period of discovery authorized by the district court in Nevada had ended at the time the second subpoena was served, as if to suggest that the appellants were *legally barred* from pursuing discovery in the District Court in the District of Columbia. We note that this issue was not raised before the District Court and, therefore, it is not properly subject to consideration by this court. *District*

*of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084–85 (D.C.Cir.1984) (issues and legal theories not asserted at district court level ordinarily will not be heard on appeal).

Furthermore, his argument that the records sought by the appellants were not in fact located in Washington, D.C., is based on purported evidence that Laxalt failed to introduce in the District Court.