**Donald E. HAYGOOD, Sr.,
Plaintiff–Appellee,**

v.

**AUTO–OWNERS INSURANCE
COMPANY, Defendant–
Appellant.\***

No. 92–8770.

United States Court of Appeals,
Eleventh Circuit.

June 9, 1993.

**\* Editors Note:** This opinion was originally published at 992 F.2d 1182–1194. It is published here as corrected.

· Clayton H. Farnham, Drew, Jerry C. Carter, Jr., Eckl and Farnham, Atlanta, GA, for defendant-appellant.

George H. Connell, Jr., Parkerson, Shelfer and Connell, Decatur, GA, for plaintiff-appellee.

Before FAY, Circuit Judge, JOHNSON, Senior Circuit Judge, and MERHIGE**, Senior District Judge.

FAY, Circuit Judge:

Appellant, Auto–Owners Insurance Co., defendant in the trial court, appeals the denial of its motion for a new trial after the jury

** Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia    sitting by designation.

found in favor of its insured, Donald Haygood, Sr., the appellee. Auto–Owners claims that, as a matter of law, it is entitled to a new trial because of various alleged material misstatements by Haygood. It also complains of four evidentiary rulings by the district court, asserting these errors compel us to order a new trial. We find all of Auto–Owners' asserted grounds for relief to be without merit; therefore we AFFIRM the denial of the motion for a new trial.

FACTS

Donald Haygood had a homeowners' insurance policy from Auto–Owners on his home in Lumpkin County, Georgia. On September 7, 1988 that home burned to the ground. After months of investigating the claim, Auto–Owners ultimately denied coverage claiming the policy was void because it believed that Haygood had deliberately caused the fire. In addition, Auto–Owners claimed that Haygood had made several material misstatements to the insurance company in the course of its investigation, misstatements which voided the policy. After demand Auto–Owners refused to pay out on the policy and Haygood sued to enforce it. Auto–Owners raised the affirmative defenses of arson and material misstatements. In light of Auto–Owners' assertion that it is entitled to a new trial on evidentiary grounds, the evidence presented is summarized briefly to place its arguments in context.

Under Georgia law "[a]n insurance company can prevail in an arson defense based solely on circumstantial evidence if it shows that the fire was of incendiary origin and that the [insured] had both the opportunity and motive to have the fire set." *Fortson v. Cotton States Mutual Ins. Co.*, 168 Ga.App. 155, 308 S.E.2d 382, 385 (1983). *Accord Massachusetts Bay Ins. Co. v. Hall*, 196 Ga. App. 349, 395 S.E.2d 851, 857 (1990). Auto–Owners presented evidence on all three of these elements.

The evidence at trial revealed that Haygood had the opportunity to set the fire as he was the last person on the property before it caught fire. In addition, he told conflicting stories about what time he left the property, giving times ranging from as early as 7:30 P.M. to as late as 11:30 P.M.. There was also evidence that his nephew, who was living with him at the time, made several suspicious trips between his parents' home and Haygood's property to move various belongings. Finally, a neighbor testified that she had seen a moving truck or van in front of the Haygoods' home only a few days before the fire.

The evidence further showed that Haygood may have had a financial motive for burning the property to collect the insurance. In 1986, two years before the fire, Haygood had gone into bankruptcy because his bank was about to foreclose on the house. The evidence showed that just prior to the fire the bank may have been about to foreclose again, this time for Haygood's failure to keep up with his payments as scheduled by the bankruptcy court. Haygood attempted to refute the evidence of motive by evidence that he was not in the financial straits suggested by Auto–Owners, but the evidence clearly suggests that he was indeed still experiencing some financial difficulties.

Nevertheless, the presence of motive and opportunity are not enough. In order to prove its defense Auto–Owners also had to prove that the fire was intentionally set. This proved to be the weakest evidentiary link. The evidence on this point was in conflict. Auto–Owners' expert testified that he found a "pour pattern" indicating intentional burning with some sort of accelerant. Not surprisingly, Haygood's expert testified he found no such evidence of intentional burning. Neither expert had conducted tests for the presence of any accelerant. The case was submitted to the jury which found in favor of the plaintiff Haygood in the amount of $306,750. Auto–Owners then moved for a new trial. That motion was denied and this appeal ensued.

DISCUSSION

■ The decision to grant or deny a new trial is reviewed under an abuse of discretion standard. *Fondren v. Allstate Ins. Co.*, 790 F.2d 1533, 1534 (11th Cir.1986). In general, in exercising that discretion, trial courts are instructed to grant new trials sought on an evidentiary basis only when the jury verdict "is against the great—not mere-

ly the greater—weight of the evidence." *Id.* (citation omitted). This standard is intended to preserve litigants' right to a jury trial and to ensure that judges will not substitute their own judgment for that of the jury with respect to disputed issues of fact. *Id.*

### I. Material Misrepresentations

On appeal, Auto–Owners asserts that it is entitled to a new trial because various statements made by Haygood constituted material misstatements "as a matter of law." *See* Appellant's Brief at 18 and *passim.* Under Georgia law, "[w]hether a misrepresentation is material is a jury question, unless the evidence excludes every reasonable inference except that there was or was not a material misrepresentation." *Perry v. State Farm Fire & Casualty Co.,* 734 F.2d 1441, 1444 (11th Cir.1984) (*citing United Family Life Ins. v. Shirley,* 242 Ga. 235, 248 S.E.2d 635, 636 (1978)). By arguing these statements are material misstatements as a matter of law, Auto–Owners appears to suggest that this issue was improperly submitted to the jury.

■ However, Auto–Owners never moved for either a directed verdict or a judgment notwithstanding the verdict on this issue. We are *not* inclined to order a new trial based on *our* independent evaluation of evidence which the defendant claims demonstrates how the trial court should have ruled on a motion the appellant never made. Our review is limited to errors allegedly made by the trial court, not those made by counsel. *See, e.g., Lattimore v. Oman Const.,* 868 F.2d 437, 439 (11th Cir.1989) (*per curiam*) (appeals court will not consider issue raised for the first time on appeal unless it is a "pure question of law" or a "refusal to consider it would result in a miscarriage of justice") (citation omitted). *See also Long v. Insurance Co. of North America,* 670 F.2d 930, 933 n. 1 (10th Cir.1982) (arguments not raised in trial court need not be addressed on appeal).

In addition, a review of the alleged misrepresentations and the record evidence convinces us that each was of such a nature that the jury was quite properly given the task of resolving the conflicting testimony and assigning the credibility and weight it found to be appropriate.

### II. Disputed Evidentiary Rulings

■ Auto–Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court. Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon,* 877 F.2d 1497, 1504 (11th Cir.1989). Moreover, even if Auto–Owners can show that certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* FED.R.EVID. 103(a). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry,* 734 F.2d at 1446. *See also Allstate Insurance Co. v. James,* 845 F.2d 315, 319 (11th Cir.1988).

#### A. Inclusion of Plaintiff's Exhibit 22

The first evidentiary ruling Auto–Owners challenges as error is the admission of Haygood's Exhibit 22. Exhibit 22 is a portion of the transcript of Haygood's statement made under oath to the insurance company in the course of its investigation of his claim. In this statement he says that, according to a credit bureau report which was destroyed in the fire, he had a "1A" credit rating before he declared bankruptcy. Auto–Owners objected to the admission of this exhibit on several grounds, primarily that it was hearsay. In response, Haygood's counsel argued that since Auto–Owners wanted to admit a portion of the statement, *see* Defendant's Exhibit No. 74 (other portions of same statement under oath), Haygood was entitled to "supplement or make whole" the entire statement in context under Rule 106. *See* FED. R.EVID. 106. R7–480.[1]

---

1. The particular exchange represented by Defendant's Exhibit 74 and Plaintiff's Exhibit 22 (represented by italics) was as follows:

   Q. My question is, your pending obligations, to whoever you owed money at the time [prior to declaring bankruptcy] were you up to date on all your payments?

   A. At the time I filed bankruptcy, yes sir. *I had, until the fire, a copy showing that from the*

We agree with Auto–Owners that this exhibit was erroneously admitted. Rule 106 allows a party to enter into evidence any part of a "writing or recorded statement" when "in fairness" that portion should be "considered contemporaneously" with the portion submitted by the adverse party. FED. R.EVID. 106. The obvious import of the rule is to allow a party to put a statement in context where, without the context, the meaning would be distorted. The touchstone for an admission under Rule 106 is that the evidence be necessary in order for some other evidence to be "fairly" considered.

■ Such was not the case with Exhibit 22. Haygood's statement about his credit rating was not necessary to clarify or put in context anything submitted by Auto–Owners in Exhibit 74. It followed his assertion, given in the statement under oath during the investigation of his claim, that he was current on all of his obligations prior to his bankruptcy. Auto–Owners wanted Haygood's statement that he was "up to date" admitted as evidence of a material misstatement in light of other evidence showing that he was delinquent on some of his obligations at that time. It objected to the statement about his credit rating as hearsay. Indeed, Haygood's claim about his credit rating was hearsay within hearsay. The reference to the credit bureau rating was an attempt to corroborate his claim that he was not delinquent by referring to a report from a credit bureau which was never offered in evidence.[2] As Auto–Owners points out, this statement was "not necessary to qualify, explain, or place in context" any statement by Haygood as is required for the admission of evidence under Rule 106. Appellant's Reply Brief at 8. Therefore, it was erroneously admitted.

■ Nevertheless, Auto–Owners fails to cite a single case in which such an error has been held to entitle the moving party to a new trial unless the error affected a "substantial right." We are totally unconvinced that this error affected a substantial right. Jurors know, and are instructed, that they are free to believe all, none or some part of a witness' testimony. Haygood's statement about his credit rating, since it was consistent with his claim that he was "up to date," would have merely reinforced Auto–Owners' case had the jury found Auto–Owners' evidence convincing and Haygood's testimony not credible. Credibility determinations are for the jury. *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1558 (11th Cir.1984) (it is jury's role, not judge's, to make credibility determinations). We will not disturb those findings now.

Auto–Owners' second objection with respect to Exhibit 22 relates to Haygood's counsel's closing argument. Appellant's Brief at 30. Haygood's attorney argued to the jury that Auto–Owners had attempted to mislead the jury by only submitting a part of Haygood's statement in its Exhibit 74, as if the part added in Exhibit 22 clarified or contradicted what was entered by Auto–Owners.[3] In fact, as discussed above, the statements added by the plaintiff did not contradict the statement entered by the defendant, but were consistent with it. Thus, this argument was misleading to the extent that there were no grounds to admit the exhibit in the first place. That is, it was not proper for Haygood's attorney to suggest that Auto–Owners was "hiding" something by properly objecting to the portion of the transcript which Haygood submitted, be-

*credit bureau that I was rated 1A. I had that pulled just before I filed bankruptcy.*
Defendant's Exhibit No. 74 & Plaintiff's Exhibit No. 22.

**2.** Haygood simultaneously managed to offer an explanation for the absence of this credit bureau report in the evidence by saying he had a copy of it "before the fire." *See* Plaintiff's Exhibit 22.

**3.** Haygood's attorney's closing argument was also misleading to the extent that he attempted to suggest that a former disgruntled employee, Russell Elvis Pressley, could have been responsible for the fire. In fact, the evidence showed that he

had no motive to do so because the alleged disagreement did not occur until sometime after the fire. To the extent that the evidence did not fairly support this inference, that argument was improper, and we disapprove of counsel offering it to us again in oral argument. However, the principal source of weakness in Auto–Owners' case was unquestionably not the confusion improperly injected on this point by opposing counsel, but the rebuttal of its expert witness by Haygood's expert witness on the issue of whether the fire was intentionally set.

cause this portion did not contradict anything submitted by Auto–Owners.

▮▮▮▮ Nevertheless, at no time during or after the closing arguments did Auto–Owners object on this ground, nor did it ask for a limiting instruction, so the objection to the closing argument is waived.[4] *See Allstate,* 845 F.2d at 319 & n. 4 (review for prejudice in closing argument dependent upon timely objection). And even were it not waived, it is simply not the sort of "substantial" error that would entitle Auto–Owners to a new trial.

B.   Exclusion of Defendant's Exhibit 34

▮▮▮▮ The second evidentiary ruling which Auto–Owners claims was error is the exclusion of its Exhibit 34. Defendant's Exhibit 34 was a letter, sent to the Haygoods from an attorney representing the bank that held the mortgage on Haygood's house, announcing that foreclosure was imminent. The district judge excluded this letter as hearsay. We agree with the appellant, Auto–Owners, that this exhibit was also erroneously excluded because it would have qualified under the business records exception to the hearsay rule contained in the federal rules. FED.R.EVID. 803(6).[5] Once again, however, any error was harmless because Haygood testified on direct examination that he knew the bank was about to foreclose on his home when he filed bankruptcy, so there is no question as to his knowledge. And as to the terms of the note, that note was

entered into evidence as Defendant's Exhibit 30. We are at a loss to understand what crucial piece of information could be gleaned from Exhibit 34 that was not adequately brought out through other evidence.[6]

The biggest mystery surrounding Exhibit 34, however, is its appearance in the record on appeal among the *admitted* exhibits. The exhibit is marked with a label which clearly has "rejected," hand written and then crossed out, on it. It also clearly has "admitted" stamped on it.[7] Notwithstanding the "admitted" stamp, we can find *no* place in the transcript in which the trial judge admitted Exhibit 34, although we find several places where he rejected it. There is also no question that the original document labeled "Defendant's Exhibit 34" is the same document described in the transcript and in Auto–Owners' brief on appeal. However, had there been any doubt on this point we would be hard pressed to resolve it by resort to any of Auto–Owners' submissions to this court.

In its motion to supplement the record on appeal with the rejected exhibits, Auto–Owners makes no mention of Exhibit No. 34 and does not include it with the documents filed with the court. *See* R.Supp. 1–76–1 & 1–78–1. Nor does it call to our attention that there is any confusion concerning the exhibits. Similarly, in Auto–Owners' motion for a new trial to the district court Exhibit 34 is never mentioned. R3–66–7.[8] Based on the

---

4. Auto–Owners did object to Haygood's testimony in which he reiterated the statement in Plaintiff's Exhibit No. 22, and it objected initially to the admission of Exhibit No. 22. However, it did so without citing to the specific rule as required by the judge's internal operating procedures. Although Auto–Owners' lawyers now protest that "[t]he district court's use of its internal rule was an abuse of discretion," Appellant's Brief at 29, and have made the rules a part of the record on appeal, *see* R.Supp. 1–84, we note that at no time did they make this argument at trial or register an objection to the rules. Indeed, quite the opposite, Auto–Owners' counsel indicated on the record, more than once, that they had read the rules, understood them, and had no objections to them. Counsel will not be heard to protest them now.

5. From the record it appears that the trial judge considered Exhibit 34 under Rule 801(d) instead of 803(6) as argued by Auto–Owners. Rule 801(d) deals with out of court statements which

are deemed not hearsay if they fall into subsections (1)(A), (B) or (C). *See* FED.R.EVID. 801(d). Exhibit 34 clearly did not qualify under any of these subsections.

6. Furthermore, there is no evidence that the Haygoods ever received this specific letter represented by Exhibit 34. The exhibit reflects that it was sent via certified mail, return receipt requested. The photocopies of the envelopes and receipts show that the letter was returned to sender as "unclaimed" and neither receipt is signed. A copy of the exhibit is attached to this opinion as Appendix 'A.'

7. *See* Appendix 'A.'

8. The motion does mention the "exclusion of defendant's exhibit no. 22" as error, an exhibit which is *not* mentioned in the brief on appeal. Curiously enough, Exhibit No. 22, which the transcript shows was ordered admitted, is no-

transcript, there is no doubt that the trial judge meant to exclude this exhibit. There is similarly little doubt that it nevertheless was somehow given to the jury. For this reason, as well as the failure to raise the issue below, we find the error complained of harmless.

### C. Exclusion of Defendant's Exhibit 66

■ Similarly, we find Auto–Owners' objection to the exclusion of its Exhibit No. 66, an unsigned loan application to the Federal Land Bank ("FLB"), to be without merit. Auto–Owners failed to lay the proper foundation for this exhibit at trial. Moreover, [since Haygood never denied that he had applied for a loan from the FLB] it appears Auto–Owners was attempting to enter this exhibit into the record as evidence that, at various times, Haygood had assigned lower values to his personal property. In light of the three other estimates that *were* in evidence, *see* Plaintiff's Exhibit No. 13 (Proof of Claim) & Defendant's Nos. 57 (bankruptcy declaration) & 120 (FLB proposal), this exhibit would have been cumulative.

### D. Exclusion of Defendant's Exhibit 71

■ Finally, Auto–Owners complains that its Exhibit No. 71 was erroneously excluded. Exhibit No. 71 is a copy of Haygood's bank statement. Auto–Owners claims it wanted this evidence admitted because it "directly contradicted appellee's statements concerning his financial condition at the time of the fire on September 7, 1988." Appellant's Brief at 19. However, Auto–Owners failed to lay a proper foundation for the admission of this record because the bank employee could not positively authenticate it and Haygood claimed not to be able to positively identify it. *See* R5–86–88, R5–116–119, and R6–329.

where to be found among the exhibits from the district court. Indeed, the transcript reflects that a number of exhibits which were admitted do not appear here—all of them defendant's. The transcript also reflects that the judge asked both counsel to review the exhibits before he sent them back to the jury. R7–578–80. From the transcript it appears that counsel had an opportunity to verify the submissions to the jury and make any corrections necessary.

■ Moreover, the relevance of this document is questionable on a number of grounds. First, although the statement shows Haygood's balance was $1,086.90 on August 5, 1988, it *also* shows that his balance was $1,799.07 on *the day of the fire.* Thus, Auto–Owners' statement, that Exhibit No. 71 "showed that appellee had only $1,000 in bank" "at the time of the fire," Appellant's Brief at 19, was not as candid as it might have been. Second, Auto–Owners' assertion that this exhibit "directly contradicted appellee's statements concerning his financial condition" seems exaggerated because Haygood's balance in one account, taken in isolation, does not seem to prove very much. It certainly does not show, without more, that his financial condition was bad. Indeed, we venture to guess many people would describe themselves as well off with a bank balance of $1,000. Therefore, its relevance was doubtful, and, on an abuse of discretion standard, doubt is generally to be resolved in favor of the district court's order. *See Allstate,* 845 F.2d at 320.

■ Third, and most disturbingly, the jury heard, notwithstanding the judge's exclusion of this exhibit, the very thing Auto–Owners wanted it to know—the amount in Haygood's account in the month prior to the fire. When Clayton Farnham, one of Auto–Owners' attorneys, was cross-examining Haygood with Exhibit No. 71 the following exchange occurred.

Q: (By Farnham) I want to go ahead and ask you about your bank balance in September as of the time of the fire. I'll ask you to look—as I recall—excuse me, when I asked you about August, you said you couldn't remember what your bank balances were; right?

A: (By Haygood) No Sir.

On this record it is difficult to tell with any degree of certainty exactly what the jury did and did not see. In the end, it is counsel's job to preserve the record on appeal. We decline to engage in any further archaeological reconstruction of this case. Nor will we order a new trial on the basis of speculation as to what the jury saw. Since Exhibit 34 came to us, along with the other admitted exhibits, stamped "admitted," we will assume that it was given to the jury.

Q: Well, let's look at that document [Exhibit 71] and see if we can refresh your recollection. Would you look four pages from the bottom on that exhibit, please.

A: Fourth page on the bottom?

Q: Yes, sir.

A: Ending balance?

Q: Right. Does that refresh your recollection as to what your bank balance was? *Do you see the ending ledger figure of $1,000?*

(At this point the judge interjects excusing the jury)

R6–329–330 (emphasis added).

This was clearly improper questioning, and an attempt to circumvent the rules of the court by saying aloud, under the guise of asking a question, the very fact that Auto–Owners wanted to bring out—the balance in the account. In this manner, not only did the amount Auto–Owners finds so crucial get before the jury, it also managed thereby to give the jurors the erroneous impression (had they failed to disregard it) that Haygood had only a $1,000 balance in this account on the *day* before the fire, as opposed to the *month* before. Thus, Auto–Owners, intentionally or not, successfully offered their own version to the jury of what this document "showed," a version which could go unchallenged by reference to the document itself. This is hardly the sort of "substantial" prejudice that would entitle Auto–Owners to a new trial.

The most disturbing aspect of this case is the conduct of the attorneys involved. Neither side's conduct in this case has reflected the sort of candor with the court that is part of the attorney's oath. *See Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1546–47 (11th Cir.1993). Specious arguments were made that could hardly have been based on a good faith interpretation of what the evidence showed. *See, e.g., supra* note 3. And although it appears from the record that the attorneys made a good case for Auto–Owners' side, none of the grounds cited on appeal seem well founded on a good faith interpretation of the facts and/or the law. We are also displeased with the repeated reference to an unpublished opinion,[9] both in oral argument and in the brief, in direct violation of our rule regarding unpublished opinions. That rule reads as follows:

> Unpublished opinions are not considered binding precedent. They may be cited as *persuasive* authority, *provided that* a copy of the unpublished opinion is attached to or incorporated within the brief, petition, motion or response in which such citation is made.

11th Cir.R. 36–2 (emphasis added).

Auto–Owners made no attempt to comply with the rule.

## CONCLUSION

For all of the foregoing reasons, the decision of the district court is AFFIRMED.

---

**9.** *Davis v. State Farm and Fire Casualty Co.,* 931 F.2d 904 (11th Cir.1991) (listing of unpublished opinions) (cited in Appellant's brief at 24 as *Davis v. State Farm and Fire Casualty Co.,* No. 90–8800 (11th Cir.1991)).

**1520**

## APPENDIX A

LAW OFFICES
**THOMPSON, FOX, HARDMAN & SAMMONS**
201 FORREST AVENUE
P. O. BOX 2515
GAINESVILLE, GEORGIA
(30503)

ROBERT B. THOMPSON
DAVID A. FOX (GA. and FLA.)
WILLIAM S. HARDMAN
DANIEL J. SAMMONS

September 23, 1986

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Mr. Donald E. Haygood, Sr.
Route 2
Upper Mill Creek Lane
Canton, Georgia 30114

Mrs. Virginia L. Haygood
Route 2
Upper Mill Creek Lane
Canton, Georgia 30114

Dear Mr. and Mrs. Haygood:

On August 7, 1986, you executed to Dawson County Bank a renewal note in the amount of $131,050.00, bearing interest at the rate of 12.5% per annum, payable September 6, 1986. This renewal note is secured by a deed to secure debt executed by you to Dawson County Bank on April 26, 1985. The total amount due on the note, including accrued interest through September 25, 1986 is $133,249.13. Interest shall continue to accrue at the rate of $44.88 per day from that date forward. The entire principal and interest, having been due on September 6, 1986, are due and payable.

Your attention is called to a provision of the note that in the event the same is collected by law or through an attorney at law an additional 15% may be collected as attorney's fees. This provision of the note is being invoked. You may avoid payment of attorney's fees by paying the full unpaid balance of principal and interest not later than ten days after the date of your receipt of this letter. Otherwise, attorney's fees will be claimed.

Demand is made for payment of the full unpaid balance due, as the same is in default. In addition to the deed to secure debt, the indebtedness is secured by all poultry equipment and any additions thereto located in the two poultry houses on the premises in Lumpkin County, Georgia.

Mr. Donald E. Haygood, Sr.
Mrs. Virginia L. Haygood
September 23, 1986
Page 2

We have been instructed to institute foreclosure proceedings to enforce collection of the indebtedness if the same is not paid not later than ten days after the date of your receipt of this letter. Under the terms of the deed to secure debt, the bank has the power to sell the property before the courthouse door in Lumpkin or Dawson County after first advertising the property for sale once a week for four weeks in the local newspapers, advertising the sale to take place on the first Tuesday in the following month. This provision of the note is being invoked. The bank shall advertise and sell the property before the courthouse door in Lumpkin County during the legal hours of sale on the first Tuesday in November, 1986.

Please be governed accordingly.

Very truly yours,

Robert B. Thompson.

RBT:nlm

cc: Mr. Donald E. Haygood, Sr. (regular mail)
Route 2
Upper Mill Creek Lane
Canton, Georgia 30114

Mrs. Virginia L. Haygood (regular mail)
Route 2
Upper Mill Creek Lane
Canton, Georgia 30114

Mr. Don D. Gordon
Dawson County Bank
Dawsonville, Georgia 30534

1522

SENDER: Complete items 1, 2, 3 and 4.

Put your address in the "RETURN TO" space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for service(s) requested.

1. ☒ Show to whom, date and address of delivery.

2. ☐ Restricted Delivery.

3. Article Addressed to:

Mrs. Virginia L. Haygood
Rt. 2, Upper Mill Creek Lane
Canton, Ga. 30114

| 4. Type of Service: | Article Number |
|---|---|
| ☒ Registered  ☐ Insured<br>☐ Certified  ☐ COD<br>☐ Express Mail | P 048 055 082 |

Always obtain signature of addressee or agent and DATE DELIVERED.

5. Signature — Addressee
X

6. Signature — Agent
X

7. Date of Delivery

8. Addressee's Address (ONLY if requested and fee paid)

PS Form 3811, July 1983 447-846

DOMESTIC RETURN RECEIPT

1524

PS Form 3811, July 1983 447-845

DOMESTIC RETURN RECEIPT

● SENDER: Complete items 1, 2, 3 and 4.

Put your address in the "RETURN TO" space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for service(s) requested.

1. ☒ Show to whom, date and address of delivery.

2. ☐ Restricted Delivery.

3. Article Addressed to:

Mr. Donald E. Haygood, Sr.
Rt. 2, Upper Mill Creek Lane
Canton, Ga. 30114

| 4. Type of Service: | Article Number |
|---|---|
| ☒ Registered  ☐ Insured<br>☐ Certified  ☐ COD<br>☐ Express Mail | P 048 055 081 |

Always obtain signature of addressee or agent and DATE DELIVERED.

5. Signature – Addressee
X

6. Signature – Agent
X

7. Date of Delivery

8. Addressee's Address (ONLY if requested and fee paid)