**LOMA LINDA COMMUNITY HOS-PITAL, a California non-profit corporation, Plaintiff,**

v.

**Donna SHALALA, Secretary of the United States Department of Health and Human Services, Defendant.**

Nos. ED–CV–940055–RT, ED–CV–940068–RT.

United States District Court, C.D. California.

Dec. 15, 1995.

---

Jacob N. Segura, Law Offices of Jacob N. Segura, Beverly Hills, CA, for plaintiff.

Russell W. Chittenden, Assistant U.S. Attorney, Los Angeles, CA, for defendant.

TIMLIN, District Judge.

## I. INTRODUCTION

Plaintiff Loma Linda Community Hospital ("Loma Linda") filed separate actions for judicial review of two decisions by Donna Shalala, as Secretary of the United States Department of Health and Human Services (the "Secretary") regarding Loma Linda's claims for additional Medicare reimbursement. The two actions have been consolidated.

Both Loma Linda and the Secretary filed motions for summary judgment raising the following question for determination by the court: Did the Secretary act arbitrarily, capriciously, and not in accordance with the law in denying Loma Linda's claim for additional Medicare reimbursement for three fiscal periods because it served a disproportionate number of low-income patients in these periods? The denial was predicated on the ground that Loma Linda did not meet its burden of disproving the Secretary's calculation of Loma Linda's percentage of low-income patients who receive Medicare, which percentage calculation is a prerequisite for reimbursement.

## II.

### THE UNDERLYING ADMINISTRATIVE HEARINGS

Ordinarily Medicare payments to hospitals are limited to fixed reimbursement amounts, although additional payments may be made to a hospital if it serves a disproportionate number of low-income patients. Low-income patients are defined by statute as those who receive Medicare Part A benefits (hospital coverage) and are eligible for federal Supplemental Security Income ("SSI"). Patients who receive only state supplementation are not defined as low-income patients. But 42 U.S.C. section 1395ww(d)(5)(F)(vi)(I) provides a formula for calculating what percentage of the hospital's patients during a fiscal period were low-income patients on a month-to-month basis so that a determination can be made whether the hospital qualifies to receive additional Medicare reimbursement.

For three fiscal periods, FPE 8–86, FPE 8–87, and FPE 12–87, Loma Linda's applications for additional reimbursement because it served a disproportionate number of low income patients were denied by the Secretary through its fiscal intermediary. Loma Linda requested a hearing before the Provider Reimbursement Review Board ("PRRB") for FPE–86 as provided by statute. 42 U.S.C. section 1395oo(a)(1)(A)(i). At the hearing, Loma Linda claimed that 21.18% of its Medicare patients during this fiscal period were eligible for SSI, thereby qualifying them as low-income patients. Loma Linda presented evidence that it had based these figures upon its patients' Medi–Cal cards which contain certain codes, "10", "20", or "60", identifying specific patients as aged, disabled, or blind. According to the Medi–Cal Eligibility Handbook, any of these three codes indicate that in addition to Medicare, a patient is eligible

for "SSI/SSP Aid," a cash assistance program "administered by the Social Security Administration."

In contrast, the Secretary's representative at the hearing, Aetna Life Insurance Company (also referred to as "Aetna" or the "Intermediary") asserted that only 14.77% of Loma Linda's Medicare patients qualified as low income.[1] Aetna did not produce any evidence in support of these figures, although it purportedly received its calculation from the Health Care Financing Administration ("HCFA") which in turn received its information from the Social Security Administration ("SSA").

Prior to the hearing, Loma Linda sought discovery of the data Aetna had used, but discovery was refused on the ground that the Federal Privacy Act, 5 U.S.C. section 552a(b) ("Privacy Act"), precluded identification of the social security numbers or medicare numbers of those patients which the Secretary claimed were eligible for SSI. At the hearing, the PRRB again denied Loma Linda's request to obtain this information.

On June 24, 1993, the PRRB granted Loma Linda's appeal and ordered Aetna to use the SSI percentage proffered by Loma Linda. It found that Aetna had not substantiated its figure of approximately 14.77%, but that Loma Linda had provided substantial evidence in support of its calculation. Aetna then requested review by the Administrator of the HCFA. On August 31, 1993, the Administrator issued FPE 8–86 Final Decision reversing the disproportionate share decision of the PRRB.

The Administrator ruled that in order to determine the number of low-income patient days, the preamble to the regulations requires matching data from the Medicare Part A tape bill file with the Social Security Administration's SSI file. The Administrator also noted that the preamble states that because of the "difficulty hospitals would have identifying their Medicare patients who are also SSI recipients," the HCFA has taken on "the task (and expense) of determining for each hospital the number of patient days of those dually entitled to Medicare Part A and SSI and have removed this burden from hospitals." Based upon this prefatory language, the Administrator concluded that the PRRB had improperly accepted Loma Linda's data and calculations as a "substitute" for the SSI data and percentage on which HCFA and Aetna relied.

The Administrator further ruled that the PRRB improperly imposed a burden upon Aetna to dispute Loma Linda's calculations when the burden should have been upon Loma Linda to demonstrate that Aetna's calculation was understated. The Administrator also concluded that Loma Linda had failed to provide any documentation to support its own computations because the Medi–Cal information used by Loma Linda also included patients receiving only state supplementation which would be precluded from the calculation of low income patients and Loma Linda's records did not reflect Federal SSI eligibility on a month-to-month basis.

Loma Linda then filed its first complaint in this court seeking judicial review of the Administrator's decision.

Loma Linda's applications for additional Medicare reimbursement because it served a disproportionate number of low-income patients for fiscal periods FPE 8–87 and FPE 12–87 were also denied. Loma Linda again appealed to the PRRB. For these two periods, Aetna utilized SSI percentages of 14.14% and 13.15%. Loma Linda's calculated percentages for the same periods were 24.95% and 36.61%. Prior to the PRRB hearing, Loma Linda again sought discovery of the underlying data used by Aetna in compiling the figures that it had obtained from the HCFA. HCFA again refused to produce any documentation to Loma Linda on the basis that such information was protected from disclosure by the Privacy Act. Loma Linda submitted support for its figures, but Aetna provided no substantiation for the numbers it received from the HCFA.

1. In order to qualify for additional Medicare benefits as a hospital serving a disproportionate number of low-income patients, fifteen percent or more of Loma Linda Medicare patients had to fall within the definition of a low-income patient, i.e., a patient eligible for social security supplementation as well as Medicare. 42 C.F.R. 412.106.

The PRRB denied Loma Linda's appeals based upon the Administrator's June 23, 1993 decision concerning FPE 8–86, finding that Loma Linda had not met its burden of disproving the accuracy of Aetna's calculation. Since Loma Linda could not obtain the data to either validate the data used in support of its calculated SSI percentage or to disprove the SSI percentage used by Aetna, the calculation provided by Aetna should be used.

The Administrator declined Loma Linda's request to review the PRRB's decisions in connection with FPE 8–87 and FPE 12–87, enabling Loma Linda to seek judicial review of them pursuant to 42 U.S.C. section 1395oo(f). Loma Linda then filed its second complaint in this court.

## III.

### CONTENTIONS OF THE PARTIES

#### A. Loma Linda

Loma Linda's main contention is that there are no restrictions in the Medicare statutes or regulations which mandate that only the SSI percentages furnished to Aetna by the HCFA through the SSA can be used to determine Loma Linda's percentage of low-income patients. Loma Linda points out that the Administrator in FPE 8–86 and then the PRRB in FPE 8–87 and FPE 12–87 (collectively the "Secretary") based their rulings upon the prefatory language to certain regulations. Arguing that prefatory language in general does not have the same weight as a regulation and that the prefatory language in question does not mandate that only the HCFA can determine the calculation, Loma Linda claims that the Secretary acted arbitrarily, capriciously, and not in accordance with the law in ruling that Aetna's calculation should be used and that Loma Linda had failed to meet its burden in disproving it.

Loma Linda asserts that at most the prefatory language shows that the Secretary voluntarily took on the burden of computing the SSI percentage and supplying it to hospitals, but nothing suggests that this was the only methodology available or that hospitals could not determine their own percentage. Loma Linda points out that under the Secretary's

reasoning, a hospital could never challenge the HCFA's calculation of low-income patients since it is the HCFA's position that the information used to make the calculation is protected by the Privacy Act.

Loma Linda contests the Administrator's finding that it did not submit evidence supporting its own calculations and, in particular, the Administrator's ruling that its data included patients receiving state supplementation and that its records did not reflect SSI eligibility on a month-to-month basis. Loma Linda claims that it presented detailed information supporting its SSI percentage computation. It claims that the Medi–Cal Eligibility Manual used by Loma Linda in determining which patients to include in its SSI percentage shows that eligibility codes 10, 20, and 60 identify those persons who receive federal SSI and possibly state benefits as well. It contends that patients who receive only state supplementation are excluded from being counted in the SSI/Medicare patient percentage calculation, but those who receive both federal and state supplemental insurance are not.

Loma Linda further argues that the Privacy Act does not preclude disclosure of the information necessary to confirm or deny the SSI percentages used by Aetna on behalf of the HCFA. Loma Linda claims that it wants to use the SSI information for a "routine use" and that "routine use" information is excluded from the Privacy Act's protections. The SSA has defined a "routine use" as use outside the department without an individual's consent "for a purpose which is compatible with the purpose for which the record was collected." Loma Linda contends that since the information collected by the SSA is used to determine whether an individual is entitled to receive SSI benefits and in turn used to determine whether a hospital is entitled to receive additional Medicare reimbursement based upon the percentage of its Medicare patients receiving SSI benefits, its need for the SSI data is "routine." Loma Linda proposes that the policy against nondisclosure will not be violated since in effect it already has the SSI information because it has the names, addresses, and social security numbers of all Medi–Cal beneficiary patients

and patients qualifying for SSI are automatically eligible for Medi–Cal. Loma Linda finally asserts that the Privacy Act does not replace the relevance standard of the discovery rules and that the information can be disclosed with an appropriate protective order.

### B. The Secretary

The Secretary contends that Loma Linda bears a heavy burden because the case involves the Secretary's contemporaneous interpretation of an SSA regulation to implement a federal statute, and the court is required to give "substantial deference to an agency's interpretation of its own regulations." The Secretary concedes that a preamble may not have the same authority as a regulation, but argues that preambles can be used to interpret statutes, as many court decisions have done. According to the Secretary, the regulation requires the low-income patient percentage to be ascertained by matching annual SSI information and Medicare information that is held by the SSA and the HCFA. For this reason alone, the Secretary contends that Loma Linda's own calculation of its low-income patient percentage is irrelevant since Loma Linda did not make the required match of this data.

The Secretary argues that even if Loma Linda could make its own showing based on data not derived directly from the SSA and the HCFA, the Administrator properly found that the evidence submitted by Loma Linda was faulty in that the Medi–Cal codes uses, "SSI/SSP Aid to the Aged," "SSI/SSP Aid to the Blind," and "SSI/SSP Aid to the Disabled," and this means that the patient might have been eligible for either SSI or state supplementary payments ("SSP"). Since patients who receive solely state supplementary payments are excluded from the definition of low-income patients, the Secretary argues that Loma Linda's evidence did not support its calculation as there is no way to determine how many SSP-only patients were included in Loma Linda's percentage.

With respect to Loma Linda's argument that it is entitled to the data underlying the HCFA's calculation, the Secretary responds that Loma Linda has not established that it falls within the "routine use" exception to the Privacy Act's prohibition against disclosure of information because the Privacy Act requires each agency maintaining a system of records to publish in the Federal Register "each routine use" to be made of its records. According to the Secretary, the system of records at issue here, the supplemental security income record, contains no routine use which would permit Loma Linda to have access to the records it wants.

As to Loma Linda's second argument that it is only requesting what it already has received through the Medi–Cal records, the Secretary replies that if that were the case, Loma Linda would have no reason to request production of the records, but in fact what Loma Linda wants to explore is the difference between what it obtained through Medi–Cal records and the data used by the Secretary to calculate its percentage. For this reason, the Secretary argues that cases relied upon by Loma Linda in which no "disclosure" occurred for Privacy Act purposes because the information already was public, are inapposite.

Finally, as to Loma Linda's argument that the underlying data it sought was relevant and thus must be produced under the discovery rules, the Secretary contends that the decisions relied upon by Loma Linda for this proposition—*Laxalt v. McClatchy*, 809 F.2d 885 (D.C.Cir.1987) and *Mary Imogene Bassett Hospital v. Sullivan*, 136 F.R.D. 42 (N.D.N.Y.1991)—have been ignored by other courts. The Secretary concludes that in any event these decisions are consistent with the HCFA's refusal to permit disclosure of the records because the decision in these cases permitted disclosure based upon court order and there has been no court order in this proceeding.

### IV.

### *DISCUSSION*

Judicial review of an agency action is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701–706. Section 706 provides that the court may set aside any agency action, findings, or conclusions found to be, among other things, "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law," "without observance of procedure required by law," or "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." *Id.* at 5 U.S.C. § 706(2)(A), (D), (F).

Congress has provided little guidance in explaining what data should be used and who may make the calculation needed to determine whether a hospital health provider serves a significantly disproportionate number of low-income patients, thereby entitling it to additional reimbursement. See 42 U.S.C. section 1395ww(d)(5)(F)(i)(I). The Secretary's decision suggested that the prefatory language to 42 C.F.R. section 412 establishes that HCFA must make the calculation, the HCFA's calculation is conclusive, and, although the health provider may question and seek administrative review of the intermediary's decision, the health provider's calculation is meaningless because it does not have direct access to the same data as the HCFA. The prefatory language, which appears as part of a response to a public comment upon the proposed rule, states: "Recognizing the difficulty hospitals would have identifying their Medicare patients who are also SSI recipients, we have undertaken the task (and expense) of determining for each hospital the number of patient days of those dually entitled to Medicare Part A and SSI and have removed this burden from hospitals."

■ In her moving papers, the Secretary has not cited any authority providing a general legal principle indicating the degree of deference, if any, a court should give prefatory language to a regulation. The cases cited by the Secretary suggest that courts use a variety of approaches in deciding how much weight to give prefatory language to a statute. *See Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Norfolk Energy, Inc. v. Hodel,* 898 F.2d 1435 (9th Cir. 1990); *McLaughlin v. ASARCO, Inc.,* 841 F.2d 1006 (9th Cir.1988). Even if this court were to afford considerable deference to the prefatory language to 42 C.F.R. section 412, it does not read anything in that prefatory language mandating that only the HCFA

may make the SSI calculation or that a hospital in its challenge to the HCFA's percentage calculation may not submit its own calculation based on data available to it.

The prefatory language simply provides that the HCFA has voluntarily undertaken to make the calculation to spare hospitals the expense and trouble, but it does not suggest that hospitals cannot make the calculation themselves if they are willing to expend the money and if they can identify their Medicare patients who also are SSI recipients. Because the prefatory language plainly is not mandatory and does not set forth an exclusive method for determining the calculation, the court finds as a matter of law, there being no genuine triable issues of material fact, that as to the 8–86, 8–87 and 12–87 fiscal periods, the Secretary acted arbitrarily, not in accordance with the law, and abused her discretion in ruling that Aetna's calculation was presumed correct and that Loma Linda had not met its burden of disproving it, even though Aetna provided no supporting data for its calculation and claimed that the Privacy Act precluded its disclosure of such data to Loma Linda.

■ The other issue presented by the parties is whether Loma Linda was entitled to have access to the data purportedly used by Aetna in making its calculation in order to challenge Aetna's figures and calculation. The PRRB ruled that such information was protected by the Privacy Act. That Act contains a categorical exception under the rubric of "routine uses." Loma Linda contends that it qualifies as an agent of the Secretary and is thus entitled to the information sought under a "routine use" exception. The parties dispute whether 58 Fed.R. 35025, 35027–28 or 58 Fed.R. 35025, 35034–37 set forth "routine uses" applicable to this matter. Regardless of which provision applies, the court finds that Loma Linda has not established, factually or legally, that it is an agent of the Secretary.

Nonetheless, the court concludes based on the uncontroverted facts that Loma Linda is entitled to have the data used by the HCFA in calculating the SSI percentage. This is not a situation in which Loma Linda has had no access to the confidential information in

issue. Indeed, Loma Linda was able to make its own calculations because of the information provided to it through California's Medi–Cal program. The Medi–Cal cards of Loma Linda's patients supplied social security numbers and certain SSI information. For this reason, Loma Linda was not asking the Secretary to disseminate information that had never been released. The policy underlying the Privacy Act of protecting confidential information from disclosure is not implicated in this particular factual situation. *See Kline v. Dept. of Health & Human Services,* 927 F.2d 522, 524 (10th Cir.1991); *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328 (9th Cir.1987); *Pellerin v. Veterans Administration,* 790 F.2d 1553 (11th Cir.1986); *Federal Deposit Insurance Corp. v. Dye,* 642 F.2d 837 (5th Cir.1981). Even if release of the data relied upon by the HCFA in making its calculation had unexpectedly included information not already known to Loma Linda, a confidentiality order could have been imposed to protect the privacy interests in issue.

The court concludes that, to enable it to challenge the HCFA's calculation, Loma Linda should have been allowed access to the data relied upon by the HCFA and by presenting data supporting its own percentage calculations in light of the provisions of 42 U.S.C. section 1395oo(a)(1)(A). This section provides that a health provider who requests a hearing because of dissatisfaction with a final determination by a fiscal intermediary as to the amount of reimbursement due to the provider "shall have the right to be represented by counsel, to introduce evidence, and to examine and cross-examine witnesses." The hearing procedure would be rendered meaningless if the intermediary's calculations must be accepted as conclusively correct and the health provider is not allowed to contest it by presenting its own calculations and by challenging the data underlying the intermediary's calculation.[2]

■ Despite the above conclusions, the court does not find that Loma Linda is enti-

tled to summary judgment as it has requested. Loma Linda's SSI calculations were based upon codes found on its patients' Medi–Cal cards; it concluded from these cards that certain patients were entitled to both Medicare and supplemental social security, thereby qualifying them as low-income for the purpose of 42 U.S.C. section 1395ww(d)(5)(F)(i)(I). Loma Linda has not established how these codes are to be interpreted. From the evidence presented at the underlying administrative hearings, the court cannot ascertain whether the notation "SSI/SSP aid" means that all patients with Medi–Cal codes 10, 20, or 60 are eligible for both SSI and state supplementation, or whether some of these patients might be eligible for state supplementation but not for SSI, or whether some patients might be eligible for SSI but not for state supplementation.

## V.

### *DISPOSITION*

For all of the above reasons, the court denies the Secretary's motion for summary judgment.

The court denies Loma Linda's motion for summary judgment in that it asks the court to rule in its favor by both reversing the decisions by the Secretary for fiscal periods 8–86, 8–87, and 12–87 and ordering the Secretary to pay over to Loma Linda additional reimbursements in accordance with Loma Linda's calculations of the disproportionate share adjustment for these fiscal periods. But having concluded that the decisions by the Secretary for fiscal periods 8–86, 8–87, and 12–87 were arbitrary, an abuse of discretion, and not in accordance with law, the court grants the alternative relief requested by Loma Linda and sets aside the Secretary's decisions for these fiscal periods and remands the consolidated actions to the PRRB in order for it to conduct further hearings consistent with the procedures and law as expressed in the discussion portion of

---

**2.** Loma Linda suggests that it met its burden of proving that its calculations were correct. The Secretary's decision, however, suggested that Loma Linda did not meet its burden of proving that Aetna's calculations were understated. This court makes no finding or conclusion as to whether either of such burdens should be imposed on a hospital health provider and, if so, as to which, if any, of these burdens is proper.

this opinion on the issue of whether Loma Linda is entitled to receive additional payment under 42 U.S.C. section 1395ww(d)(5)(F)(i)(I) for fiscal periods 8–86, 8–87, and 12–87.