[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11082

_____

CENTRAL BAPTIST CHURCH OF ALBANY, GEORGIA, INC.,

Plaintiff-Appellee,

*versus*

CHURCH MUTUAL INSURANCE COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:16-cv-00231-LAG

_____

Before JORDAN, JILL PRYOR, Circuit Judges, and MORENO,* District Judge.

MORENO, District Judge:

This case arises from a near-decade-long property insurance coverage dispute that culminated in a jury verdict in favor of the insured, Central Baptist Church of Albany, Georgia ("the church" or "the insured"). Church Mutual Insurance Company ("the insurance company" or "the insurer") asserted that the church engaged in a material misrepresentation related to a subsequent, undisclosed claim with another insurer. Ahead of trial, however, the district court excluded all evidence of the alleged misrepresentation. Following the jury's award of damages to the church, the insurance company moved for a new trial, which the court denied. Finding no basis to revisit the evidentiary ruling and no error in the court's denial of post-trial relief, we affirm the judgment based on the jury's verdict.

## I.    BACKGROUND

### A.    The Loss

The church owns property consisting of a large church sanctuary and three connected wings. The sanctuary and two of the wings have asbestos tiles on the roofs, while the third wing has an asphalt shingle roof. The church purchased an all-risks insurance policy from the insurance company.

---

* The Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, sitting by designation.

In 2014, the property suffered damage when a storm passed through Albany. The church reported roof damage to the insurance company, which in turn assigned an independent adjuster to inspect the property. The adjuster determined that the damage could be repaired for $2,300. Thereafter, the insurance company's adjusting agent determined that the roofs had sustained some wind damage that could be repaired, and it remitted a check for $1,302.99. This was the cost to repair the damage, less a $1,000 deductible.

Displeased with the proffered payment, the church sought another opinion. Its hired contractor determined that the hail damage to the asbestos tile roofs required the roofs to be fully removed and replaced—not simply repaired. Accordingly, the church obtained two quotes to determine the cost of replacing the roofs and repairing the damage to the property. MidSouth Construction estimated that the work would cost $1,377,131.03 and The Howarth Group estimated that the total cost would be $1,480,310.71.

Both estimates were conducted pursuant to language in the policy, which provides that any such repairs or replacements following a loss must be of "comparable kind and quality." With respect to the asbestos tiles, The Howarth Group and MidSouth estimates determined that slate constitutes like kind and quality as asbestos tiles are no longer manufactured.

The church commenced this action against the insurance company on December 19, 2016, for breach of contract and bad faith under Georgia law. The church's pretrial order submission

sought to recover $1,420,536.61 for exterior damage to its roofs caused by the hail storm—the replacement cost value of the claim as represented by the church in its amended proof of loss claim submitted to the insurance company. The district court later bifurcated the case to address the bad faith claim following the conclusion of the breach of contract claim.

### B.    Hurricane Michael

In October 2018, nearly four years after the original storm, Hurricane Michael struck and damaged the church's property. At that time the property was insured with AmTrust North America, with whom the church filed a claim.

The church obtained a repair estimate from Strategic Roofing for replacement of the property's roofs after Hurricane Michael. The estimate amounted to $718,469.20. Unlike The Howarth Group and MidSouth estimates, Strategic Roofing's estimate was not for comparable kind and quality. The church did not provide the lower estimate to the insurance company, nor did it inform the insurance company of the AmTrust North America claim.

### C.    The Trial

Once the insurance company discovered the second claim, it argued that the church voided the policy by engaging in a material misrepresentation, and it wanted to present evidence on the alleged misrepresentation. During a pretrial conference, the district court ordered additional briefing as to the relevance and admissibility of

22-11082                Opinion of the Court                5

evidence pertaining to the AmTrust North America claim. Following this briefing, the court held that all evidence related to the alleged misrepresentation would be excluded at trial because the insurance company had not proffered evidence from which any reasonable jury could find that the church's claim with AmTrust North America was an omission amounting to a material misrepresentation.

At trial, the church presented testimony regarding the increased construction costs associated with the delay in payment of insurance proceeds. At the close of evidence, the insurance company made a motion under Federal Rule of Civil Procedure 50, arguing that the church's evidence regarding the measure of the underlying damages and the measure of the change in damages over time was speculative. The court denied the motion. The jury returned a verdict in favor of the church. The jury awarded damages totaling $1.75 million, as well as prejudgment interest at 7% per annum.[1]

The insurance company filed a motion to alter the judgment or, in the alternative, for a new trial on the issue of damages under Federal Rule of Civil Procedure 59 (but not Rule 50(b)). It argued that the verdict amount was unsupported by competent evidence, was contrary to the explicit language of the policy that required that replacement costs be measured at the time of the incident, and

---

[1] After the trial, the parties proceeded to litigate the church's bad faith claim. The district court granted summary judgment to the insurer on this claim. Because the bad faith claim is not before us on appeal, we discuss it no further.

involved double counting. The district court denied the insurance company's Rule 59 post-trial motion, and this appeal followed.

## II.    STANDARDS OF REVIEW

There are two issues before us. First, whether the district court erred in barring the insurance company from presenting the alleged misrepresentation evidence. Second, whether the district court erred in denying the insurance company's Rule 59 motion. The parties dispute the appropriate standards of review. The insurance company argues that we should employ a *de novo* review of both issues, while the church urges the Court to use an abuse of discretion standard.

### A.    The Evidentiary Ruling

The district court was tasked with determining whether evidence of the church's alleged material misrepresentation should be presented at trial. The insurance company argues that the district court's ruling should be treated as a ruling on a summary judgment motion because, among other reasons, the court was considering whether there was sufficient evidence to allow the misrepresentation defense to go forward.

The district court properly adhered to this Circuit's precedent by analyzing whether any "reasonable jury could have found material misrepresentations on the basis of the proffered evidence." *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1444 (11th Cir. 1984). In *Perry*, we noted that "[w]hether a misrepresentation is material is a jury question, unless the evidence excludes every

reasonable inference except that there was or was not a material misrepresentation." *Id.* Thus, before excluding evidence of the church's alleged misrepresentation, the district court was required to determine whether a reasonable jury could find that there was a material misrepresentation. That this analysis is akin to a summary judgment analysis does not control the standard of review we employ.

The insurance company did not move for summary judgment of the breach of contract claim on the ground of misrepresentation. The district court made a ruling on whether to exclude evidence, and evidentiary rulings are reviewed for an abuse of discretion. *See Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993) (citing *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989)). "A district court abuses its discretion if it 'applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous.'" *Sowers v. R.J. Reynolds Tobacco Co.*, 975 F.3d 1112, 1122 (11th Cir. 2020) (citation omitted). Even if the insurance company "can show that certain errors were committed, the errors must have affected 'substantial rights' in order to provide the basis for a new trial.'" *Haygood*, 995 F.2d at 1515 (citing Fed. R. Evid. 103(a)).

### B.    The Rule 59 Order

We generally review the district court's denial of a motion for a new trial under Rule 59 for an abuse of discretion. *See Mekdeci ex rel. Mekdeci v. Merrell Nat'l Lab'ys, Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1513 (11th Cir. 1983). When reviewing a district court's decision under this standard, "we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc).

The insurance company argues that whether it is entitled to a new trial on damages should be reviewed *de novo* because the interpretation of a contract, the sufficiency of the evidence, and whether an award amounts to double counting are all questions of law. We disagree. The insurance company is not appealing the jury verdict on the ground that the evidence was insufficient as a matter of law. As for the insurance company's arguments regarding double recovery, "[w]e review a district court's determination regarding duplicative damages [in a jury trial setting] for clear error." *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1200 n.17 (11th Cir. 2009). "[T]he jury enjoys substantial discretion in awarding damages within the range shown by the evidence, and . . . its verdict does not fail . . . so long as a rational basis exists for the calculation." *United States v. Sullivan*, 1 F.3d 1191, 1196 (11th Cir. 1993). And while federal courts have "no general authority to reduce the amount of a jury's verdict[,]" *Johansen v. Combustion*

*Eng'g, Inc.*, 170 F.3d 1320, 1328 (11th Cir. 1999), they do have a responsibility to preclude double recovery. *St. Luke's*, 573 F.3d at 1203.

"Georgia public policy generally prohibits a plaintiff from a double recovery of compensatory damages[.]" *Junior v. Graham*, 870 S.E.2d 378, 382 (Ga. 2022). Under Georgia law, double recovery occurs when a party is awarded multiple damages for the same wrong. *Id.* Accordingly, courts may adjust an award that violates the prohibition against double counting. *See St. Luke's*, 573 F.3d at 1203.

## III.    DISCUSSION

We turn first to the district court's evidentiary rulings on the admissibility of the alleged misrepresentation evidence.

### A.      The District Court's Exclusion of Misrepresentation Evidence

The insurance company challenges the court's exclusion of evidence of the alleged misrepresentation. We cannot grant any relief because the company waived the defense.

A waiver is a "voluntary, intentional relinquishment of a known right." *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994). *See also Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012) ("A waived claim or defense is one that a party has knowingly and intelligently relinquished[.]"). "The party asserting waiver bears the burden of proof." *Smith v. R.J. Reynolds Tobacco Co.*, 880 F.3d 1272, 1281 (11th Cir. 2018).

We note two instances in the record that demonstrate the insurance company waived its misrepresentation defense.

After the district court precluded all evidence of the alleged misrepresentation, counsel for the church asked at the close of all proof at trial whether the insurance company would be relying on several affirmative defenses. Included in the list of affirmative defenses was fraud, as the church stated that there had "been no assertion whatsoever that the church . . . misrepresented anything to Church Mutual." D.E. 356 at 102:6–7. Thereafter, the insurance company's counsel and the district court judge engaged in the following colloquy:

> THE COURT: Before you go any further, let me ask, are you relying on any of these affirmative defenses?
>
> MR. SCHMIDT: No. And I think I'd said this during one of our telephone conferences, your Honor.
>
> THE COURT: I don't know what you said during the telephone conference. I think we said up here that you didn't believe at this point that you were relying on any of those.
>
> MR. SCHMIDT: No.
>
> THE COURT: So of any of the ones listed, Church Mutual is not relying on.
>
> MR. SCHMIDT: Withdrawn on the record, your honor.

*Id.* at 102:15–25.

The second instance occurred shortly after. The district court, during the charge conference, summarized the parties' previous discussion: "Ladies and gents, the instructions are as we discussed with one exception. On number 13, because [the insurance company] is not offering any affirmative defenses, we took out the paragraphs that reference affirmative defenses." *Id*. at 125:23–126:1. Counsel for the church responded in the affirmative. Counsel for the insurance company failed to respond or object at all.

These instances demonstrate that, although the insurance company argued in favor of admitting the evidence of the alleged misrepresentation ahead of trial, it thereafter failed to preserve the issue for appeal. When afforded two opportunities to object to the district court's ruling, the insurance company declined to do so and it first expressly waived its fraud (i.e., misrepresentation) defense. These instances amount to the "voluntary, intentional relinquishment" of the insurance company's right to appeal the court's evidentiary ruling. *Glass*, 33 F.3d at 1347.

The insurer argues that it never intentionally relinquished its affirmative defense of misrepresentation because the district court itself withdrew the defense from the jury's consideration when it ruled that the insurance company was barred from presenting evidence to support it. But a court cannot waive a right or defense for a party. And if a defendant believes that a court has done so, it is incumbent on that party to object to the court's alleged actions. Here, the insurance company did not object. In fact, after counsel for the church stated that "there's been no assertion whatsoever

that the church committed fraud or misrepresented anything to Church Mutual[,]" the insurance company told the court that its affirmative defenses were "withdrawn on the record[.]" D.E. 356 at 102:6–25.

The insurer further argues that the only reasonable interpretation of the transcript is that its counsel was indicating that the insurer had no proposed jury instructions on the misrepresentation defense because the court had already removed that issue before trial. Given the court's preclusion of the evidence, it would be reasonable, says the insurer, not to submit jury instructions on the matter. Yet counsel is required to preserve the issue for appeal by raising a simple objection on the record without rearguing the issue. Further, we cannot read the insurer's responses as solely referring to the jury instructions. While the second instance may have occurred during the jury charge conference, the first occurred in the context of the insured's Rule 50 motion and without qualification. D.E. 356 at 100:5–13.

The insurance company argues that this Court looks to the intent of the party against whom waiver is asserted, and it would be illogical for the insurer's counsel to intend to withdraw such a defense after previously arguing in favor of it. While we do look to intent, *see Smith*, 880 F.3d at 1281, our waiver inquiry focuses on conduct. *See Glass*, 33 F.3d at 1347 (explaining that waiver requires intentional relinquishment of a known right). Here, the insurance company's conduct shows an intentional relinquishment of the

defense by explicitly withdrawing it and then later failing to raise an objection.

In sum, the record shows an intent by the insurance company to abandon the misrepresentation defense. Accordingly, the issue is not preserved for appeal, and we may not opine on the court's decision to exclude evidence of the alleged misrepresentation. *See Evans v. Bexley*, 750 F.2d 1498, 1499 n.1 (11th Cir. 1985) ("In federal practice any question which has been presented to the trial court for a ruling and not thereafter waived or withdrawn is preserved for review." (quoting *United States v. Harue Hayashi*, 282 F.2d 599, 601 (9th Cir. 1960))).

B.    <u>The District Court's Denial of the Insurance Company's Post-Trial Rule 59 Motion</u>

Next, we turn to the insurance company's challenge to the district court's denial of its post-trial motion. It contends that the district court erred in denying the motion because the jury's damages award contravenes the terms of the policy. It argues that the award of total roof replacement as measured by increased cost of construction is contrary to the plain language of the policy, is not based on competent evidence, and amounts to double counting.

Under Rule 59(e), "a court may alter or amend a judgment if there is newly-discovered evidence or manifest errors of law or fact." *Metlife Life & Annuity Co. of Conn. v. Akpele*, 886 F.3d 998, 1008 (11th Cir. 2018). Such a motion cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Jacobs v. Tempur-Pedic Int'l,*

*Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (citations omitted). "A judge should grant a motion for a new trial when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (citation and quotation marks omitted). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.* (citation and quotation marks omitted). And the denial of a Rule 59 motion which was based on weight-of-the-evidence grounds is reviewed for abuse of discretion. *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 951 (11th Cir. 2018).

As for altering the judgment, courts may only issue a remittitur if the "jury's award is unreasonable on the facts." *Johansen*, 170 F.3d at 1331 (emphasis omitted). This is because a "jury's verdict should not be disturbed if there is competent evidence in the record to support it." *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 827 (11th Cir. 1985). If the court does find that the jury award exceeded the amount supported by the evidence, the award should only be reduced "to the maximum award the evidence can support." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1284 (11th Cir. 2000) (citations omitted).

1.      *Whether the Policy Covered "Increased Construction Costs"*

The insurance company argues that the jury's award based on increased construction costs violated the unambiguous terms of the policy, which states that in case of loss or damage, the property is valued "[a]t [r]eplacement [c]ost (without deduction for depreciation) as of the time of loss or damage . . . ." D.E. 333-3 at 13. The church's position is that the insurance company's counsel affirmatively consented to a jury instruction on replacement cost that did not include "date of loss" language, thereby waiving appellate review. The insurance company responds that it did not waive appellate review because it made this and similar arguments in both its Rule 50(a) and Rule 59 motions.

The insurance company argues that the award contradicts the terms of the agreement under Rule 59. But in making its Rule 59 motion, the insurer did not preserve this argument if it consented to a jury instruction that opened the door to an award based on increased construction costs.

"A party that invites an error cannot complain when its invitation is accepted." *Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1231 (11th Cir. 2012) (citing *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1293–94 (11th Cir. 2002)). In other words, "it is 'waiver in the truest sense' when a party goes 'beyond failing to raise a relevant argument' and in fact 'affirmatively relie[s] on' a 'standard that they now argue is erroneous.'" *FTC v. AbbVie Prods.*

16                    Opinion of the Court                    22-11082

*LLC*, 713 F.3d 54, 65 (11th Cir. 2013) (quoting *G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012)).

During the charge conference, the insurance company's attorney consented to Jury Instruction No. 15, the "Measure of Damages – Replacement Cost – Policy" instruction. D.E. 336 at 16; D.E. 356 at 106–07. This instruction defined replacement cost as "the cost to replace 'on the same premises' the lost or damaged property with other property of comparable material and quality used for the same purpose." D.E. 336 at 16. The instruction did not include any language restricting the award to the date of loss.[3]

The district court asked counsel for the insurance company to "read through it and make sure" that they "like[d] how it[]" was phrased. D.E. 356 at 107:4–5. The insurance company's attorney stated, "[t]hat's fine." *Id.* at 107:20. The insured's counsel then asked the court to again affirm for the record that the parties had reached "an agreement that this is the Measure of Damages

---

[3] Jury Instruction No. 15, Measure of Damages – Replacement Cost – Policy, states:

> If you decide for Central Baptist on its claim for breach of contract, you must then fix the amount of its damages under the terms of the policy. Central Baptist seeks damages on a replacement cost basis. Replacement cost is the cost to replace "on the same premises" the lost or damaged property with other property of comparable material and quality used for the same purpose.

D.E. 336 at 16.

22-11082                Opinion of the Court                17

instruction[.]" *Id.* at 107:22–24. The court responded, "Yes." *Id.* at 107:25. Counsel for the insurance company made no objection.

The insurance company argues that it did not waive this issue because in addition to Jury Instruction No. 15, the district court further instructed the jury that the parties are "bound by [the policy's] plain and unambiguous terms" and that the jury must "fix the amount of [the church's] damages under the terms of the policy." D.E. 356 at 132:11–13, 135:17–19. Even so, the insurance company repeatedly accepted or waived any objection to the church's damages theory. Counsel for the insurance company withdrew an objection when the church's expert witness explained the church's increased construction cost theory of damages. D.E. 354 at 233:4–22. The insurance company further failed to object during the church's closing argument when counsel urged the jury to consider increased construction prices when calculating any award. D.E. 356 at 155:25–156:8, 158:18–159:2.

"It is a cardinal rule of appellate review that a party may not challenge as error a ruling . . . invited by that party." *In re Carbon Dioxide Indus. Antitrust Litig.*, 229 F.3d 1321, 1327 (11th Cir. 2000) (citation omitted). The insurance company invited jury instructions that allowed for an award based on increased construction costs and further failed to object when the church's counsel told the jury in closing argument to consider the increased construction costs. It cannot now argue that such an award contradicts the language of the policy. *See United States v. Silvestri*, 409 F.3d 1311, 1337 (11th Cir. 2005) ("When a party responds to a court's proposed jury

instructions with the words 'the instruction is acceptable to us,' such action constitutes invited error.").

### 2.    Whether the Proof of "Increased Construction Costs" Was Deficient

The insurance company challenges the testimony given by Austin Burton, the church's witness, who spoke of the increased construction prices. In its order denying the insurance company's Rule 59 motion, the district court found that the insurer waived any objection to Burton's testimony. The court further determined that even if the matter had been preserved, Burton's testimony was admissible and the jury's verdict was supported by sufficient evidence.

Largely relevant to our inquiry is the following exchange that took place during the redirect of Burton:

> [THE CHURCH'S COUNSEL]: Mr. Burton, on Joint Exhibit Number 7, your estimate—
>
> A: Yes.
>
> Q: —we noticed that the pricing was October of 2015. That's more than four years ago.
>
> A: Uh-huh.
>
> Q: What's the average annual price increase since then?
>
> A: I mean, with the, you know, tariffs on steel and oil and everything else, I would guess, you know, four to seven, eight percent.

Q: And is that based on your reasonable and rational perceptions as a general contractor in the area?

A: Oh yeah. We—

[THE INSURANCE COMPANY'S COUNSEL]: Your Honor, I'm going to object.

THE COURT: What's the basis of the objection?

[THE INSURANCE COMPANY'S COUNSEL]: I withdraw the objection.

D.E. 354 at 233:4–18.

A Rule 59 motion is not meant to "give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000) (citation omitted). Counsel's withdrawal of the objection waived any argument regarding the admissibility of Burton's testimony. Accordingly, the issue was not preserved for appeal. *See* Fed. R. Evid. 103(a)(1); *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1503 (11th Cir. 1985).

### 3.    *Whether the Evidence Supports the Verdict*

The insurance company next argues that the proof of damages was too speculative to support a recovery because Burton made a guess regarding the increased costs of construction in the Albany market as opposed to relying on any firsthand knowledge. Indeed, "[i]t is axiomatic [in Georgia] that damages cannot be left to speculation, conjecture, or guess-work and must be proven with reasonable certainty." *Kroger Co. v. U.S. Foodserv. of Atlanta, Inc.*, 607

S.E.2d 177, 181 (Ga. Ct. App. 2004). However, "it will be enough if the evidence show[s] the extent of damages as a matter of just and reasonable inference." *Maiz v. Virani*, 253 F.3d 641, 664 (11th Cir. 2001) (alteration in original) (citation omitted). After careful review, we hold that Burton's testimony, in conjunction with the two estimates submitted by the church to the jury, sufficiently support the jury's verdict. Stated in Rule 59 terms, the jury's verdict was not against the great weight of the evidence. *Lipphart*, 267 F.3d at 1186.

The church submitted an estimate from Chuck Howarth of The Howarth Group and another from Burton (MidSouth). The estimates factored in the average increased annual construction costs and both estimates included a summary of the various costs by category. The church notes that when the higher of each category within the summaries are taken, the figures total $1,760,387.94, a number higher than the jury's award of $1,750,000.00. Accordingly, the jury was able to choose from a range of figures to support its award. *See United States v. Garcia*, 447 F.3d 1327, 1334 (11th Cir. 2006) ("The jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial, and the court must accept all reasonable inferences and credibility determinations made by the jury." (citation omitted)).

The jury ultimately issued an award on the higher end of the figures presented at trial. Nevertheless, we are "not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because

judges feel that other results are more reasonable." *EEOC v. St. Joseph's Hosp. Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016) (quoting *Christopher v. Florida*, 449 F.3d 1360, 1373 (11th Cir. 2006)). "[T]he jury was entitled to weigh the evidence. It did so, and it found for" the church. *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 812 (11th Cir. 2020) (citing *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016)). Because sufficient, admissible evidence supported the jury's findings, and because the jury's verdict was not against the great weight of the evidence, we hold that the district court did not abuse its discretion in denying the insurance company's Rule 59 motion on these grounds.

### 4. Whether Adding Prejudgment Interest Yields a Double Recovery

The insurance company argues that the district court erred in holding that the jury's award of both prejudgment interest and inflation-adjusted damages did not constitute a double recovery. The church posits that the two forms of damages cannot be double recovery because they are awarded for different purposes and different wrongs.

Under Georgia law, double recovery occurs when a party is awarded multiple damages for the same wrong. *Junior*, 870 S.E.2d at 382. Accordingly, we must determine whether the jury's award of increased construction costs and the jury's adjustment for prejudgment interest were meant to right the same wrong. Upon reviewing the district court's order, we find no clear error.

a)        The Purpose of Prejudgment Interest

Interest is defined as payment "for the use or forbearance of money, or as damages for its detention[.]" *Brown v. Hiatts*, 82 U.S. 177, 185 (1872). In Georgia, "[t]he purpose of prejudgment interest is to compensate the injured party for the delay in receiving money damages." *Crown Series, LLC v. Holiday Hosp. Franchising, LLC*, 851 S.E.2d 150, 157 (Ga. Ct. App. 2020) (citation omitted). We have similarly noted that prejudgment "[i]nterest is awarded . . . as compensation for the use of funds to which the plaintiff was ultimately judged entitled, but which the defendant had the use of prior to judgment." *Miller Indus. v. Caterpillar Tractor Co.*, 733 F.2d 813, 823 (11th Cir. 1984) (citation omitted), *abrogated on other grounds by E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986).

We consider Judge Learned Hand's thoughts on interest to be useful in further explaining its purpose in contract law:

> Whatever may have been our archaic notes about interest, in modern financial communities a dollar today is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well-settled beliefs about value. The present use of my money is itself a thing of value and, if I get no compensation for its loss, my remedy does not altogether right my wrong.

*Procter & Gamble Distrib. Co. v. Sherman*, 2 F.2d 165, 166 (S.D.N.Y. 1924). Thus, prejudgment interest ensures that an award has a value equal to the present value of the harm suffered when the

breach occurred. Justice often takes many years to achieve, and pre-judgment interest ensures that compensation is complete.

### b)    The Purpose of Inflation-Adjusted Damages

As for the award based on the increased cost of construction, the parties have not provided any cases within Georgia or the Eleventh Circuit that explain the purpose of inflation-adjusted damages. Relevant authorities, however, indicate that inflation-adjusted damages can be awarded where the delay in completing repairs is due to the length of litigation and not the fault of the property owner. *See, e.g.,* Bruner & O'Connor Construction Law § 19:80 (Nov. 2024 update); *Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 108–09 (Conn. 1998); *Anchorage Asphalt Paving Co. v. Lewis*, 629 P.2d 65, 68–69 (Alaska 1981).

The district court reasoned that by adjusting for the increased cost of construction, the jury compensated the church for the diminished purchasing power due to inflation. We agree. There are countless reasons why prices escalate. For example, Burton explained during his testimony that in his experience, there are "usually [] three to four increases per year depending on the economy and storms and supply and demand and everything that comes with it." D.E. 354 at 233:13–22. Thus, inflation-adjusted damages account for the many ways in which the cost of goods may have increased in the interim period between the breach and the award.

c)      Whether the Two Awards Were Meant
to Right the Same Wrong

We acknowledge that the line between interest and inflation adjustment appears to be quite fine. But put plainly, prejudgment interest compensates non-breaching parties for the loss of the use of their money from the date the breach occurred until judgment is entered. Prejudgment interest does not, however, fully capture the impact of inflation. Awarding damages that reflect increased costs ensures that the non-breaching party is not harmed by the persistent rise in the general level of prices. Had the church been compensated for the price of construction at the time either of the estimates were made, it would be required to pay out of pocket for the difference between the price of construction in 2016 or 2017, when the estimates were made, to the price of construction in 2019, when the jury returned its verdict. Therefore, the jury's award finding $1.75 million in damages—which is consistent with both The Howarth Group and MidSouth estimates—and its award of prejudgment interest appear reasonably intended to make the church whole. *See United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998) ("Both the Second Circuit and the D.C. Circuit have held that merely adjusting the dollars the plaintiff would have earned to compensate for diminished purchasing power because of inflation does not compensate for the lost use of money in the intervening time.").

Our holding is consistent with Georgia's contract law, which seeks "to place the non-breaching party, in so far as possible, in the

same position it would have been if the contract had not been breached." *Eastgate Assocs., Ltd. v. Piggly Wiggly S., Inc.*, 410 S.E.2d 129, 132 (Ga. Ct. App. 1991). The two types of damages address different wrongs and work together to ensure that the church is made whole. Prejudgment interest ensures that the church is compensated for the loss of use of the money in the intervening time between the breach and the award. Inflation-adjusted damages account for the increased cost of construction and reflect the change in purchasing power due to inflation. Accordingly, the district court did not err in holding that the jury's award did not amount to double recovery.

## IV.    CONCLUSION

After benefiting from oral argument, we find no error in the district court's rulings and affirm the jury's verdict.

**AFFIRMED.**